**David D. HEATON, Appellant,**

v.

**Crispus C. NIX, Warden, ISP, Appellee.**

**No. 89–3001.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1990.

Decided Jan. 9, 1991.

Jon M. Kinnamon, Cedar Rapids, Iowa, for appellant.

Thomas D. McGrane, Des Moines, Iowa, for appellee.

Before JOHN R. GIBSON, Circuit Judge, ROSS, Senior Circuit Judge, and LARSON,* Senior District Judge.

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

JOHN R. GIBSON, Circuit Judge.

David Heaton was convicted of first degree murder after firing six shots through the door of a bar and killing one of the members of a band performing there. Heaton's petition for a writ of habeas corpus alleges: (1) that his attorney rendered ineffective assistance because he failed to fully investigate and present an intoxication defense and because he failed to investigate and present the alternative defense of self-defense; and (2) that the use of terrorism as the underlying felony for felony murder constituted double jeopardy and violated his due process rights. The district court [1] denied the writ. We affirm.

After a bench trial, an Iowa district court judge convicted Heaton of first degree felony murder. *State v. Heaton*, No. 18529 (Iowa Dist.Ct. April 14, 1981). The Iowa Supreme Court affirmed the conviction. *State v. Heaton*, 319 N.W.2d 312 (Iowa 1982). Heaton sought post conviction relief in state courts, alleging the same issues presented in this appeal. The state district court and the Supreme Court of Iowa denied relief. *Heaton v. State*, 420 N.W.2d 429, 430 (Iowa 1988). Heaton then unsuccessfully sought habeas corpus relief in the federal district court of Iowa. *Heaton v. Nix*, No. 88–248–E, slip op. at 11 (S.D.Iowa Sept. 13, 1989).

After drinking beer and taking drugs throughout the day of January 30, 1981, trial tr. at 193–200, Heaton went to The Other Place Lounge where he got into a dispute with a fellow patron. The bar's manager, Charles Rankin, ejected Heaton from the bar. The district court found that Heaton then walked about 100 feet to his truck and got in. Slip op. at 9. A couple of minutes later, Rankin looked out the door. He slammed it shut after he saw Heaton sitting in a pick-up truck with his left arm extended out the window, pointing a gun in Rankin's direction. Heaton fired six rounds from a .357 magnum through the closed door and then drove off at a high speed. One of the bullets killed a band member performing in the bar.

The state prosecuted Heaton for felony murder, relying on the underlying felony of terrorism. Iowa Code Ann. §§ 707.2(2), 708.6 (West 1979).[2] Heaton's defense was based on diminished capacity by reason of intoxication.

Heaton's attorney called two witnesses—the defendant himself and a friend, Duane Donaldson, who testified that he had seen Heaton consume drugs and alcohol throughout much of the day of the crime. Donaldson was not present when the murder occurred.

Heaton testified that he had consumed large quantities of drugs and alcohol on the day of the crime. He claimed that when he fired the shots that he was in a "blackout" state and did not later remember the crime.

The trial court discounted Heaton's version of the facts and stated that Heaton appeared to be in "full control of his faculties immediately before the shooting," slip op. at 9, and that his claim of a blackout had been undermined by his statements to arresting officers the next day that he "didn't mean to kill anybody" and that he thought "premeditation" was needed for proof of first degree murder. Slip op. at 7, 9. The trial court found that these statements indicated that Heaton remembered what had happened and had been considering his possible defenses to any charges. Slip op. at 9. The trial court also found Donaldson's testimony unconvincing, as he was not with Heaton when the crime occurred and because he appeared to be carefully calculating his answers. Slip op. at 6. After the Iowa Supreme Court affirmed the first degree conviction, the trial court, Iowa Supreme Court, and the federal district court all denied post conviction relief. The federal district court concluded that Heaton was not prejudiced by his attorney's failure to interview and present the testimony of certain witnesses. "Because petitioner lacked a reasonably viable intoxication defense, counsel was not ineffective." *Heaton v. Nix*, slip op. at 8.

1. The Honorable Donald E. O'Brien, District Judge for the Southern District of Iowa.

2. *See* Iowa Code Ann. § 708.6 (West Supp.1990) for the current definition of terrorism.

## I.

Heaton contends that his trial counsel was ineffective because he failed to present lay and expert witnesses who would have undermined the state's ability to establish specific intent to commit the underlying felony of terrorism. Iowa Code Ann. § 708.6 stated that:

A person commits a class "D" felony when the person does any of the following with the intent to injure or provoke fear or anger in another:

(1) shoots, throws, launches, or discharges a dangerous weapon at or into any building ... and thereby places the occupants thereof in reasonable apprehension of serious injury....

Heaton argues that he was in a mad alcoholic rage, "operating at a subcortical level and acting out his own aggression and anger" without the specific purpose of hurting another person. Appellant's Brief at 44. Heaton states that witnesses at the bar would have testified at trial regarding his consumption of alcohol and drugs at The Other Place and his aggressive and assaultive behavior. Appellant's Brief at 40. He further states that his attorney did not consult with or present testimony by two expert witnesses who would have testified as to the effect of alcohol and drugs on Heaton's capacity to form intent. Heaton further states that his attorney failed to present testimony on the "synergistic" effect of drugs and alcohol and on an individual's ability to perform perfunctory tasks (such as driving a car or shooting a gun) while in a "blackout" state. Appellant's Brief at 38.

Claims of ineffective assistance of counsel are governed by the standard announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail, a convicted defendant must establish that his counsel's performance fell below an objective standard of reasonableness in light of all the circumstances, *id.* at 687–91, 104 S.Ct. at 2064–67, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct.

at 2068. *See also Otey v. Grammer,* 859 F.2d 575, 577 (8th Cir.1988), *cert. denied,* — U.S. ——, 110 S.Ct. 3288, 111 L.Ed.2d 796 (1990); *Spillers v. Lockhart,* 802 F.2d 1007, 1009 (8th Cir.1986).

Judicial scrutiny of counsel's performance is highly deferential. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Counsel is not expected to conduct limitless investigation. An attorney's strategic choices made after "less than complete investigation" can be considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 691, 104 S.Ct. at 2066.

■ Here, trial counsel presented the testimony of the defendant and Duane Donaldson. Trial counsel admitted in his deposition that he did not recall interviewing and did not depose any of the witnesses from the bar and that he did not interview any expert regarding the effects of drugs and alcohol on mental functioning. Dep. of Anthony S. Troia at 14, 48–49.

Although there is a strong presumption that counsel performed effectively, *Hinkle v. Scurr,* 677 F.2d 667, 670–71 (8th Cir.), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 609 (1982), a decision to curtail investigation must be supported by reasonable judgment. In his deposition, trial counsel was not asked why he limited his investigation. The record suggests that trial counsel did have access to the entire prosecution file, including witness statements, developed by the county attorney's office. Dep. of Troia at 64–67. We need not examine, however, whether this record demonstrates that counsel's performance was "outside the wide range of professionally competent assistance," *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066, as we conclude that Heaton suffered no prejudice.

Depositions taken during the post conviction investigation reveal that Heaton did in fact drink and smoke marijuana throughout the evening at The Other Place. Dep. of Ginger Prettyman at 10–11, 19–21; Dep. of Vicki Komasinski at 10–11. The witnesses' testimony also suggests, however, that Heaton was functioning in a somewhat normal manner. Although acting "loud

and obnoxious," he was able to socialize and dance. Dep. of Prettyman at 12; Dep. of Brian Heaton at 15–17. This type of testimony would have provided further support for the trial testimony of Rankin, the bar manager, who testified that Heaton did not appear drunk.

Another witness, Ricky Davenport, stated in an affidavit that he saw Heaton consume fifteen drinks at The Other Place and smoke marijuana. App. at 115. The district court concluded that Davenport's statement "is of questionable probative value" because he consumed " 'in excess of 15 mixed drinks' " himself. Slip op. at 5. We agree with that assessment.

Trial counsel also failed to interview Heaton's brother, Brian Heaton, who was with him at The Other Place. In a deposition, Brian Heaton testified that his brother appeared drunk on the night in question and that his speech was "a little slurred." Dep. of B. Heaton at 16. If Brian Heaton's testimony had been presented at trial, it likely would have undermined his brother's intoxication defense, however, because Brian also recalled that his brother was angry at the bar manager and vowed to " 'get him.' " Dep. of B. Heaton at 30.

In all probability, the testimony from the bar patrons would have done more harm than good to Heaton's case. While the witnesses could have corroborated Heaton's claims of drug and alcohol consumption, they also would have lent further credence to the State's claim that Heaton, despite drinking, was still able to function and that he was capable of forming the requisite intent.

Heaton also argues that trial counsel was ineffective because he failed to present expert testimony on the combined effects of alcohol and drugs on mental functioning. We have examined the deposition and affidavit of Heaton's two experts and are satisfied that the district court did not err in concluding that their testimony would not have significantly helped Heaton. *See* slip op. at 6–7. Rather than negating Heaton's ability to form the requisite intent, the testimony of Dr. Regis Weland suggests that Heaton did in fact have the kind of intent necessary to be found guilty of terrorism under the Iowa statute.[3] The other expert, Dr. Nils Varney, merely stated that if Heaton had a particular neurological problem (which some of Heaton's symptoms suggested he might) that alcohol could have "greater disinhibiting effects" on him than it would on those without the neurological problem. Affidavit of N. Varney at 3.

We conclude that there is no reasonable probability that the testimony of these witnesses would have altered the result of the proceeding. We also observe that the trial court had before it significant evidence that Heaton was able to function on the night in question.[4] Because Heaton did not have a "reasonably viable" intoxication defense, *see Heaton v. Nix,* slip op. at 8, he was not prejudiced by counsel's failure to interview and present the testimony of lay and expert witnesses.

Heaton also asserts that trial counsel failed to put forth an alternative and inconsistent defense of self-defense. In light of the facts found at trial, we find no merit to this argument. Heaton has failed to establish prejudice because of his attorney's omissions; his claim of ineffective assistance of counsel must therefore be denied.

## II.

Heaton also challenges the use of terrorism as the underlying felony to support felony murder, arguing that this violates due process and subjects him to greater punishment in violation of the double jeopardy clause. We have examined Heaton's argument and conclude that the

---

3. The intent required by Iowa Code Ann. § 708.6 is "the intent to injure or provoke fear or anger in another." Although Dr. Weland stated that he didn't think Heaton "was out to harm anybody specifically," he also stated that Heaton was "mad because he got kicked out of the bar and *he was going to show them he was*

*mad and that was it.*" Dep. of R. Weland at 65–66 (emphasis added).

4. Rankin, the bar manager, testified at length that Heaton did not appear to have difficulty standing, walking, or driving. Trial Tr. at 58, 85–87.

fifth amendment's double jeopardy clause simply is not implicated here. The double jeopardy clause "prohibits successive prosecutions for the same criminal act or transaction under two criminal statutes" unless each statute requires proof of an element that the other does not. *Grady v. Corbin*, — U.S. —, 110 S.Ct. 2084, 2087, 109 L.Ed.2d 548 (1990).

There is no successive prosecution here. Heaton was tried once. He was convicted of felony murder only and was sentenced only for that offense. Under federal law, a criminal defendant can be convicted of and punished for both the underlying felony and felony murder without violating the double jeopardy clause of the fifth amendment if he is prosecuted for both offenses in one trial and if the state legislature has authorized cumulative punishment. *Thompson v. State of Missouri*, 724 F.2d 1314, 1319 & nn. 9–10 (8th Cir.) (citing *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983)), *cert. denied*, 466 U.S. 961, 104 S.Ct. 2176, 80 L.Ed.2d 559 (1984). *See also Jones v. Thomas*, 491 U.S. 376, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989); *United States v. Powell*, 894 F.2d 895, 899–900 (7th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 2189, 109 L.Ed.2d 517 (1990).

Heaton contends that support for his double jeopardy argument is found in the recent Supreme Court case of *Grady*. *Grady* held that the double jeopardy clause "bars a *subsequent* prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* 110 S.Ct. at 2087. (emphasis added). *Grady* is inapplicable here, as Heaton was convicted of one offense in one trial.

Given that a defendant can be cumulatively punished for felony murder and the lesser included felony if the state has authorized cumulative punishment and if the charges are brought in one trial, *see Thompson*, 724 F.2d at 1319 & nn. 9–10, we fail to see how the double jeopardy clause would bar the use of a lesser included felony such as terrorism to support a felony murder conviction.

■ Heaton's argument that "second degree murder ... cannot be enhanced by 'participating' in an act which is also an element of murder," Appellant's Brief at 50, simply lacks a constitutional basis. Heaton's argument is, at base, an argument against the merger doctrine, which some states apply to prevent felonies that are an integral part of homicide, such as assault, from being used to support a felony murder charge. *See Annotation, Application of Felony–Murder Doctrine Where The Felony Relied Upon Is An Includible Offense Within The Homicide*, 40 A.L.R.3d 1341–55 (1971). The Supreme Court of Iowa has specifically rejected the merger doctrine as it applies to forcible felonies, including terrorism. In *State v. Ragland*, 420 N.W.2d 791 (Iowa 1988), it stated: "[T]he legislature 'intended that felonious assaults, including willful injury under Section 708.4, be felonies that may serve as the basis of a felony-murder and that the merger doctrine ... does not apply to such assaults.'" *Id.* at 793 (quoting *State v. Beeman*, 315 N.W.2d 770, 777 (Iowa 1982)).

Finding no merit in Heaton's claims, we affirm the judgment of the district court.