_____

No. 95-1260
_____

Jeffrey K. Ragland,              *
                                 *
          Appellant,             *
                                 *   Appeal from the United States
     v.                          *   District Court for the
                                 *   Southern District of Iowa.
Thomas E. Hundley, Warden,       *
Fort Madison Penitentiary,       *
                                 *
          Appellee.              *

_____

                 Submitted:  November 13, 1995

                     Filed:  March 20, 1996
_____

Before BEAM, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

BEAM, Circuit Judge.


     Jeffrey K. Ragland (Ragland) appeals the district court's[1] denial of
his 28 U.S.C. § 2254 petition for a writ of habeas corpus.  Ragland objects
to Iowa's felony-murder law as interpreted and applied by the Iowa Supreme
Court.  We affirm.


**I. BACKGROUND**


     After attending a concert, a group of five friends decided to swing
by a grocery store to get some beer.  They chatted with some mutual
acquaintances in the grocery store parking lot.  While they talked, a car
sped into the parking lot and the occupants shouted at them.  That car then
stopped.  The occupants exited and approached the group of friends.  One
of the newcomers carried an

_____

[1]The Honorable Ronald E. Longstaff, United States District
Judge for the Southern District of Iowa.

iron pipe and one carried an empty beer bottle in each hand. The leader of the new group, Ragland, demanded that the two groups fight, even though they had had no previous contact, amicable or otherwise. The friends demurred, and as one, Timothy Sieff, backed away with his hands up, the iron pipe wielder, Matthew Gill, swung the pipe like a baseball bat, felling Sieff with one blow. Although an ambulance was summoned during the ensuing melee, Sieff died before help arrived.

After Sieff fell, the fight moved across the parking lot and into the store with Ragland, now carrying the iron pipe, in pursuit of two of the victim's companions. A store employee tried to record the license plate number of the aggressor group's car when it subsequently left the premises. The car stopped. Ragland then got out and spat upon the employee.

Ragland was tried and convicted of first-degree felony murder. Despite his youth, Ragland's extensive record of unprovoked serious assaults and evident pleasure in hurting people convinced the trial court that life imprisonment, without possibility of parole, was the appropriate sentence.[2] Ragland appealed both his conviction and his sentence. The Iowa Supreme Court affirmed. State v. Ragland, 420 N.W.2d 791 (Iowa 1988). Ragland's state

---

[2]The trial court sentenced Ragland, who was 17 at the time of the crime, as an adult. Jt. App. at 76. The trial court found Ragland's record to be "probably one of the worst records that [it had] ever seen . . . as far as assaults." Id. at 81. That court had rarely encountered someone who "apparently gets so much satisfaction . . . out of causing injury, pain, and suffering to someone else." Id. at 82. The court noted that Ragland's record of assaults stretched from when he was nine years old, that Ragland had injured many people over the years, that within the year before his trial "at least once a month [Ragland had] inflicted an injury on someone that required medical treatment, hospitalization, or caused permanent injury," and that the victim of Ragland's most recent assault, which occurred just two days before the trial in issue, was still hospitalized at the time of Ragland's sentencing. Id.

postconviction actions were also unsuccessful.  Ragland v. State, No. 90-920 (Iowa Ct. App. May 29, 1991).  Ragland subsequently filed a petition for federal habeas relief, which the district court denied after de novo review of the magistrate's report and recommendation.  Ragland v. Hundley, No. 4-93-CV-10719, order (S.D. Iowa Nov. 15, 1994).  Ragland appeals.

On appeal, Ragland argues that his felony-murder conviction violates his constitutional right to due process and his right against double jeopardy because the underlying felony (willful injury) and the murder (killing with malice aforethought) resulted from the same act.  Ragland also contends that inadequacy in the jury instructions as to the element of malice aforethought deprived him of due process.[3]  He further asserts that the Iowa Supreme Court's limitation of the statutory merger doctrine in felony-murder cases violates his right to equal protection.

## II. DISCUSSION

Ragland's argument that he cannot be convicted of felony murder because the underlying felony, willful injury, was an integral part of the homicide is without merit.  There is no double jeopardy issue because Ragland was convicted of one crime only, felony murder, and sentenced for that crime only.  See Heaton v. Nix, 924 F.2d 130, 134 (8th Cir.), cert. denied, 500 U.S. 956 (1991).  In fact, double jeopardy is not implicated even when a state pursues convictions and punishment for both the underlying felony and the felony murder, so long as the defendant is prosecuted for both offenses in one trial and the state legislature has authorized cumulative punishments.  Id.  That a lesser crime is

---

[3]We note that Ragland apparently did not raise the alleged inadequacy of the jury instructions until after his conviction, despite having ample opportunity and invitation to do so.

-3-

an element of a greater crime simply does not render conviction of the greater crime a double jeopardy violation.  Id.

The companion argument--that in this case there can be no felony murder because the murder was accomplished by one blow not only lacks merit but is, at bottom, a question of state law over which we have no jurisdiction.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (federal habeas courts may not reexamine state court determinations of state law questions).  Ragland argues that  a felonious assault which results in a murder cannot be the basis for a felony-murder charge under Iowa's statutory merger doctrine.  Instead, it must be charged as a second-degree murder.  The State of Iowa and the Iowa Supreme Court disagree.

Iowa's statutory merger doctrine forbids separate convictions on both a lesser included offense and the greater offense.  Iowa Code Ann. § 701.9 (West 1993).  In State v. Ragland, 420 N.W.2d at 793, and State v. Beeman, 315 N.W.2d 770, 776-77 (Iowa 1982), the Iowa Supreme Court decided that the Iowa legislature has declined to extend the "merger doctrine" to felony murder.[4]  E.g., Iowa v. Anderson, 517 N.W.2d 208, 214 (Iowa 1994); see also Iowa Code Ann. §§ 702.11; 707.2 (West 1993).  Since Ragland was convicted of one crime only, felony murder, there is no statutory merger issue.

---

[4]Some states have extended a form of the merger doctrine to felony murder, in that they do not allow felonious assault to be the underlying felony on which a felony-murder charge is based. This is to avoid the prosecution's bootstrapping a simple homicide to a higher degree of murder without showing the requisite intent. Iowa's legislative scheme, however, explicitly includes felonious assault in the listed felonies which will support a felony-murder charge.  Iowa Code Ann. § 702.11 (West 1993).  The Iowa scheme nonetheless avoids any serious bootstrapping concerns by permitting felony-murder charges to lie only when the killing in issue is a murder, i.e., a killing with malice aforethought.  Id. at § 707.2. In any case, it is well within a state's discretion to discourage felonious gang assaults by holding the participants in such attacks liable for first-degree felony murder for any murders resulting therefrom, regardless of which member of the attacking group ultimately strikes the fatal blow.

Ragland makes much of the fact that Sieff was killed with a single blow, arguing that due process concerns preclude enhancement of second-degree murder (which carries a less severe sentence) by "participation" in the same act which resulted in the murder. However he fails to acknowledge Iowa's statutory inclusion of "felonious assault" as an underlying felony which will support a felony-murder charge, or to distinguish this case from our decision addressing the nearly identical question in Heaton v. Nix.

In Heaton, we found that there simply was no constitutional issue implicated in a felony-murder conviction, where the underlying felony, terrorism, consisted of the same act that resulted in the murder. 924 F.2d at 133-34. Heaton, acting entirely by himself, had fired several shots into a building from which he had been ejected by the victim. The court found that Iowa's specific inclusion of "felonious assault" as a basis for felony murder and refusal to apply the merger doctrine to such situations was determinative. Id. at 134. Because this case involves a murder resulting from a blow inflicted during a group attack led by Ragland, and not the act of an isolated person acting alone, it does not even present as clear of a bootstrapping question as that rejected in Heaton. See id.; supra n.4. The Heaton court in no way found that there were several shots, rather than just one, to be dispositive or even relevant. We cannot imagine a different result or analysis had there been only one shot. What was dispositive in that case, and is dispositive in this case, is Iowa's specific inclusion of felonious assault as a basis for felony murder, and its concomitant explicit refusal to expand the merger doctrine to encompass felony murder.

Ragland also argues that he was denied due process under the jury instructions because he was held liable for Gill's malice aforethought when he, Ragland, did not intend to kill anyone. He does not dispute that the State proved, as it must, that Gill acted

with malice aforethought.[5]  That is the essence of the felony-murder doctrine, a knowing or willful participant in the underlying felony is liable for any resulting reasonably foreseeable murder by a cofelon, regardless of whether the participant intended that murder to be committed.[6]  See Tison v. Arizona, 481 U.S. 137, 159 (1987) (Brennan, J. dissenting).  As ably pointed out in the magistrate's report and recommendation,[7] the jury instructions, read as a whole, Cupp v. Naughten, 414 U.S. 141, 146-47 (1973), were adequate on this point and could not have misled the jury.  See Boyde v. California, 494 U.S. 370, 380 (1990).

The instructions explained aiding and abetting in a public offense (willful injury).  Jt. App. at 148.  They defined "willful injury" and the intent necessary for that offense.  Id. at 152.  The instructions further set out the joint criminal enterprise doctrine which applies in felony murder; that "when two or more persons, acting in concert, know[]ingly participate in a public offense, each is responsible for the acts of the other done in furtherance of the commission of the offense . . . unless the act was one which the person could not reasonably expect to be done in the furtherance of the commission of the offense."  Id. at 150.  That is, knowing participants in a felony are liable as principals for the foreseeable acts of their cofelons.  The instructions also detailed the requirements of "malice aforethought" and "murder,"  and the requirements for felony murder.  Id. at 144-45.  Thus,

---

[5]This argument was made to and correctly rejected by the Iowa Supreme Court.  Ragland, 420 N.W.2d at 793-94.

[6]While Ragland argues that this amounts to strict liability, it does not.  The felony-murder doctrine does not apply to murders which are not reasonably foreseeable, and the state must still prove that the victim was murdered during the course of a qualifying felony and that the defendant was a willful participant in that underlying felony.

[7]The Honorable Celeste F. Bremer, United States Magistrate Judge for the Southern District of Iowa.

Ragland's complaint that "malice aforethought" was conclusively presumed in Sieff's murder, is without merit. Taken together, these instructions adequately explained to the jury that Ragland was guilty of felony murder if the state proved beyond a reasonable doubt that he and another knowingly participated in the offense of "willful injury" and one of them murdered their victim. Id. at 139-156; see State v. Sauls, 356 N.W.2d 516, 520 (Iowa 1984). In this noncapital context, whether Ragland struck the fatal blow or intended that Sieff die is irrelevant. What is relevant is that he intended for his group to harm Sieff; at his command, one of its members did so with malice aforethought; and Sieff died as a result.

Finally, Ragland, a white male, argues that his equal protection rights are violated by the felony-murder doctrine. He argues that felony murder itself amounts to an impermissible classification because only felony murderers are liable for murders that they did not intentionally aid and abet. He claims, therefore, that felony murderers are a suspect class within the class of murderers.[8] Of course, participating in one of the statutory felonies supporting a felony-murder charge is participating in a course of action from which murders are all too foreseeable. As such, it is perfectly rational and permissible for a state to equate knowing participation in those felonies with aiding and abetting in the murders which foreseeably ensue.

Further, contrary to Ragland's assertions, Iowa's aiding and abetting statute does not require that a person personally commit every act of the crime which was aided or abetted, which would

---

[8]Ragland, skirting frivolity, further argues that strict scrutiny applies to his claim. This argument is clearly without merit.

render "aiding and abetting" a term without meaning,[9] but requires only that the aider and abettor's liability be commensurate with his extent of involvement in and culpability for the crime in question.  See Iowa Stat. Ann. § 703.1 (West 1993).  The Iowa Supreme Court has specifically addressed whether, under Iowa law, aiders and abettors of the underlying felony may be held liable for any resultant murder, regardless of whether they personally had a specific intent to kill, and has consistently answered in the affirmative.  See Conner v. State, 362 N.W.2d 449, 455 (Iowa 1985); State v. Ragland, 420 N.W.2d at 791, 793-94.  This interpretation of Iowa law is definitive for our purposes, and Ragland's forceful disagreement with the Iowa Supreme Court's interpretation of that law does not implicate the equal protection clause.

**III. CONCLUSION**

For the reasons stated above, we affirm the district court's judgment.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[9]Likewise "aiding and abetting" felony murder is an oxymoron and meaningless.

-8-