**Denise Cleone RHODE, Appellant,**

v.

**Barbara OLK–LONG, Warden, Iowa Correctional Institution for Women, Mitchellville, State of Iowa, Appellee.**

No. 95–1898.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1995.

Decided April 29, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied May 3, 1996.*

---

* Judge McMillian would grant the suggestion for rehearing en banc.

Jon M. Kinnamon, Cedar Rapids, IA, argued, for appellant.

Thomas McGrane, Asst. Atty. Gen., Des Moines, IA, argued. Thomas G. Fisher, Jr., Asst. Atty. Gen., on brief, for appellee.

Before BEAM, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Denise Rhode appeals the order of the district court [1] denying her petition for a writ of habeas corpus. We affirm.

## I.

On January 27, 1989, Rhode telephoned the Blank Clinic and informed a nurse that her four-month-old nephew, Matthew, had hit his head when his walker tipped against a wall. She said that he had a "goose egg" on his head, that his eyes were rolled back in his head, and that his arms and legs were stiff. The nurse told Rhode that Matthew needed immediate medical attention. Rhode then telephoned Matthew's father, and the two took him to the hospital. Matthew died the following day.

Rhode was charged with felony murder and child endangerment. She waived her right to a jury trial, and the case was tried before a judge in Iowa state court. Although Rhode did not testify at trial, her testimony about Matthew's death given at an earlier juvenile proceeding was read into evidence. In the juvenile hearing, she testified that, on the day Matthew was injured, she left him with her parents, Marilyn and Charles Marsh, between 11:00 a.m. and 1:00 p.m. or 1:30 p.m. During that time, she said, Matthew fell off the bed but sustained no apparent injuries. She further stated that after she returned, she fed Matthew, put him in the walker in the kitchen, left the room, and a short while later heard him crying. She testified that when she returned, she found the walker tilted and Matthew's head against the wall. According to her, her two children, ages five and three, were playing nearby.

At trial, several doctors who treated Matthew and the pathologist who performed his autopsy testified for the state. The doctors all agreed that Matthew's injuries could not have resulted from the walker tipping over or from falling off a bed. The injuries could only have resulted from a direct and intentional blow with extreme force to the baby's head. The medical experts were unable to pinpoint exactly when the injury occurred, but they opined that Matthew was injured between 10:30 a.m. and 3:30 p.m.

Rhode's parents, Marilyn and Charles Marsh, were subpoenaed to appear as witnesses for the state. In chambers, the Marshes asserted their Fifth Amendment privilege against self-incrimination and did not testify. At the conclusion of the trial, the court found that their refusal to testify was a "ruse, a ploy to generate doubt by their silence where no reasonable doubt otherwise exists."

At the close of the state's case, Rhode's attorneys asked to withdraw as defense counsel. The attorneys also told the court that they were concerned that Rhode might not be competent to assist in her defense. The

---

1. The Honorable Charles R. Wolle, Chief United States District Judge for the Southern District of Iowa.

court granted the attorneys' request to withdraw and appointed replacement counsel. Her new attorneys told the judge that they believed Rhode was competent, so the judge decided not to hold a competency hearing. Rhode's attorneys then rested without presenting any evidence. The court then found Rhode guilty of felony murder and child endangerment and sentenced her to life imprisonment for felony murder and ten years for child endangerment. Rhode is serving her sentences concurrently.

Rhode appealed, contending in part that the trial court should have held a competency hearing at the time that her attorneys first indicated concerns about her competence. The Iowa court of appeals found that because reasonable grounds existed to question whether Rhode was competent to stand trial, the trial court should have held a competency hearing. The court remanded the case to determine whether Rhode was competent at the time she was tried. Two and a half years after the trial, the trial court held a competency hearing. After the testimony was completed, the court found that the evidence presented by Rhode and the state was in "equipoise." Because a defendant is presumed competent in Iowa, the court held that Rhode was competent to stand trial. The Iowa court of appeals then affirmed the competency determination as well as Rhode's convictions. *State v. Rhode,* 503 N.W.2d 27, 35, 38–41 (Iowa Ct.App.1993) (*en banc* ).

In her petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, Rhode set forth six grounds for relief. The district court denied the petition on all grounds and Rhode renews these claims on appeal.

## II.

■ Rhode first argues that her conviction is invalid because the state trial court lacked jurisdiction over her case. It has long been established that federal habeas corpus relief is available when a conviction is void for want of jurisdiction in the trial court. *See, e.g., Keizo v. Henry,* 211 U.S. 146, 148, 29 S.Ct. 41, 41–42, 53 L.Ed. 125 (1908); *Ex parte Siebold,* 100 U.S. (10 Otto) 371, 375, 25 L.Ed. 717 (1879); and *Houser v. United States,* 508 F.2d 509, 512 (8th Cir.1974). (Indeed, for

many years, the writ of habeas corpus was available solely in such cases. *Houser,* 508 F.2d at 512.) We disagree, however, with Rhode's contention that the trial court lacked jurisdiction.

■ Rhode premises her jurisdictional argument exclusively on Iowa law. She asserts that the court lost jurisdiction over her case when it failed to conduct a competency hearing during her trial, as required by Iowa Code Ann. § 812.3. The Iowa court of appeals, however, held that the failure to conduct a contemporaneous competency hearing did not deprive the trial court of jurisdiction to try, convict, and sentence Rhode. *State v. Rhode,* 503 N.W.2d at 34. Because a " '[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary,' " *Martin v. Solem,* 801 F.2d 324, 331 (8th Cir.1986), quoting *Wills v. Egeler,* 532 F.2d 1058, 1059 (6th Cir.1976) (*per curiam* ), the decision of the court of appeals conclusively establishes that the trial court had jurisdiction over Rhode.

## III.

Rhode next challenges the post-conviction competency hearing. She alleges that the state of Iowa denied her due process by determining her competency two and a half years after the court was legally obligated to conduct a competency hearing; she further alleges that there was insufficient evidence to support a finding that she was competent.

■ The conviction of a legally incompetent person violates due process. *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). While post-conviction determinations of competency are generally disfavored, *id.* at 387, 86 S.Ct. at 843, we have held that a post-conviction competency hearing is proper so long as "a meaningful hearing" remains possible. *Harkins v. Wyrick,* 552 F.2d 1308, 1311 (8th Cir.1977). We agree with the district court and with the Iowa court of appeals that Rhode received a meaningful and constitutional post-conviction competency hearing. At the hearing, there was testimony from several medical experts who had examined

Rhode either during the trial or not long after her conviction. These witnesses offered their expert opinions on Rhode's competence to stand trial in 1989, and we think that the "contemporary nature of these doctors' examinations of appellant was sufficient to make an adequate hearing possible" in 1992. *Id.* at 1311–12. We are also of the view that the evidence presented at the hearing was, contrary to the petitioner's contention, sufficient to support a conclusion that she was competent when she committed the offense. For instance, there was a great deal of testimony that she was not suffering from the mental illness that she claimed rendered her incompetent to stand trial and testimony that she was competent to stand trial. We have read the record of her post-trial hearing with care and find it more than adequate to support the finding of the trial court.

Rhode also argues that the state trial court deprived her of due process by requiring her to bear the burden of demonstrating that she was incompetent. We disagree. The Supreme Court recently held that the due process clause permits a state to require a defendant to bear the burden of proving his or her own incompetence. *Medina v. California,* 505 U.S. 437, 450–51, 112 S.Ct. 2572, 2580, 120 L.Ed.2d 353 (1992). In Iowa, criminal defendants are presumed competent when evidence about competency is in "equipoise." *State v. Pedersen,* 309 N.W.2d 490, 496 (Iowa 1981). Rhode contends that *Medina* should apply only when the competency hearing and trial are held contemporaneously. She argues that applying a presumption of competence in a post-conviction competency hearing violates due process because it unfairly adds to the difficulties inherent in such hearings. This argument is without merit. In *Medina,* 505 U.S. at 445–46, 112 S.Ct. at 2577–78, the Supreme Court indicated that federal courts should not disturb state laws allocating the burden of proof in competency hearings. The *Medina* decision was based upon the long-standing principle that state legislatures, not federal courts, should establish state rules of criminal procedure. *Id.* Because we believe that this principle applies with equal force to post-conviction competency hearings, we de-cline to adopt Rhode's narrow reading of *Medina.*

IV.

Rhode argues that she was denied due process because there was insufficient evidence presented at trial to prove that she killed Matthew and because there was insufficient evidence that she acted with malice aforethought, this latter being an element of all murder offenses, even felony murder, under Iowa Code Ann. § 707.1.

In reviewing these claims, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). If the record supports conflicting inferences, we are required to assume that the trial court resolved all conflicts in favor of the prosecution. *Id.* at 326, 99 S.Ct. at 2793. Although it is true that some parts of the record could be read to support Rhode's theories that either her parents or her children could have inflicted the fatal injuries, we find ample evidence in the record that Rhode killed Matthew. Particularly when read in the light most favorable to the prosecution, the evidence overwhelmingly supports the conclusion that Rhode killed Matthew.

The record also amply supports a finding that Rhode acted with malice aforethought. The medical experts testified that head injuries as severe as Matthew's could result only from intentionally striking the baby's head with great force against a hard flat surface. To sustain such severe injuries accidentally, one doctor opined that Matthew would have had to fall over twenty feet. Furthermore, in Iowa, malice may be inferred from the defendant's prior dealings with the victim. *State v. Johnson,* 318 N.W.2d 417, 438 (Iowa 1982), *cert. denied,* 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982). At trial, Rhode's husband testified

that he had seen her shake and spank Matthew, several doctors testified that he showed signs of "shaken baby syndrome," and Matthew's mother testified that she had previously found bruises on her son after he spent time with Rhode. Taken together, the evidence of Rhode's prior mistreatment of Matthew and the severity of his injuries provided more than enough evidence for the court to find that Rhode acted with malice aforethought.

## V.

Rhode next argues that the trial court violated due process by concluding that the Marshes' assertion of their Fifth Amendment privilege against self-incrimination was a ruse. We reject this argument. While it is well established that a trial court is not permitted to draw inferences from a witness's assertion of his or her Fifth Amendment privilege, *Johnson v. United States,* 318 U.S. 189, 196, 63 S.Ct. 549, 553, 87 L.Ed. 704 (1943), a due process violation can serve as the basis for federal habeas corpus relief only if the alleged error so infected Rhode's trial as to render the proceeding "'fundamentally unfair.'" *Anderson v. Goeke,* 44 F.3d 675, 679 (8th Cir.1995), quoting *Moore v. Wyrick,* 760 F.2d 884, 886 (8th Cir.1985) (*per curiam* ).

We are not convinced, in the first place, that the state trial court drew improper inferences from the Marshes' assertion of the privilege against self-incrimination. Indeed, as both the district court and the Iowa court of appeals observed, it seems more probable that the trial court's statement was actually a refusal to draw any inferences at all from the Marshes' decision not to testify. We need not resolve the issue, however, because we find that even if the trial court erroneously considered the Marshes' assertion of their constitutional rights in reaching its conclusions, we see no reasonable probability that the error affected the ultimate outcome of the trial. *Anderson,* 44 F.3d at 679. As we have already indicated, the great weight of the evidence indicated that Rhode

maliciously inflicted the injury that led to Matthew's death.

## VI.

Rhode next contends that her convictions violate due process and double jeopardy. She claims that due process precluded the court from using child endangerment as a basis for her felony murder conviction. (In Iowa, a person commits murder if he or she "kills another person while participating in a forcible felony." Iowa Code Ann. § 707.2.2.) Alternatively, Rhode argues that the principle of double jeopardy precludes convicting her for both child endangerment and first degree murder. We disagree.

Rhode's argument that the Iowa court was precluded from using her participation in child endangerment to convict her of first degree murder lacks a constitutional basis. *See Heaton v. Nix,* 924 F.2d 130, 134 (8th Cir.1991), *cert. denied,* 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991). Rhode is essentially arguing for the merger doctrine, which bars using felonies that are an integral part of a homicide to support a felony murder conviction. The Supreme Court of Iowa has rejected the merger doctrine for forcible felonies such as child endangerment. *State v. Beeman,* 315 N.W.2d 770, 776–77 (Iowa 1982). Even if it had not, violations of state law cannot serve as a basis for federal habeas relief, and Rhode fails to cite a single federal case (nor are we aware of any) that supports her due process argument.

Rhode's double jeopardy arguments are also meritless. The Supreme Court has held that a state legislature may authorize cumulative punishment for the same offense. *Missouri v. Hunter,* 459 U.S. 359, 366–68, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983). In the context of felony murder, "a criminal defendant can be convicted of and punished for both the underlying felony and felony murder without violating the double jeopardy clause of the fifth amendment if he is prosecuted for both offenses in one trial and if the state legislature has authorized cumulative punishment." *Heaton,* 924 F.2d at 134. The Iowa court of

appeals held that the Iowa legislature has authorized cumulative punishment for felony murder. *State v. Rhode*, 503 N.W.2d at 40–41 ("[t]he Iowa legislature's intent is clear: felony murder and the underlying felony can both be punished," *id.* at 41); *see also State v. Ragland*, 420 N.W.2d 791, 793 (Iowa 1988). Because we are bound by the state court's interpretation of the Iowa statutes, *Missouri v. Hunter*, 459 U.S. at 368, 103 S.Ct. at 679, Rhode's convictions for both child endangerment and felony murder did not violate double jeopardy.

### VII.

 Finally Rhode argues that, because her conviction stems from a single act, sentencing her to life in prison violates the Eighth Amendment's prohibition against cruel and unusual punishment. We have held that legislatures are entitled to "wide latitude in prescribing their punishments." *Simmons v. State of Iowa*, 28 F.3d 1478, 1483 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1163, 130 L.Ed.2d 1119 (1995). Only sentences that are "grossly disproportionate" to the crime could conceivably violate the Eighth Amendment. *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 2705, 115 L.Ed.2d 836 (1991) (plurality opinion). We are not inclined to hold that a life sentence is grossly disproportionate to the crime of murdering an innocent four-month-old baby with malice aforethought.

### VIII.

For the foregoing reasons, we affirm the district court's order denying Rhode's petition for a writ of habeas corpus.

HEANEY, Circuit Judge, dissenting:

As the Iowa Court of Appeals determined, when Denise Rhode was tried in the Iowa state court, reasonable grounds existed to examine her competency to stand trial. Under Iowa Code § 812.3 (1994), the court was required to suspend the proceedings immediately and to hold a competency hearing. The court ignored this mandate. Instead, Rhode was given the hearing two and one-half years after her conviction. In my judgment, it was not possible for Rhode to receive a meaningful hearing at that time. Thus, I dissent.

A post-conviction competency hearing is a proper remedy for a wrongful denial of a pretrial hearing only if a "meaningful hearing" is possible. *Harkins v. Wyrick*, 552 F.2d 1308, 1311 (8th Cir.1977); *Griffin v. Lockhart*, 935 F.2d 926, 931 (8th Cir.1991) (granting habeas corpus because it "seemed impossible to now conduct a meaningful nunc pro tunc hearing" over three years after defendant's trial).

In this case, the hearing was not held until two and one-half years after Rhode's conviction. The court had to determine both whether Rhode was competent at the time of the competency hearing and at the time of her trial. The expert testimony available to the state was inadequate to meaningfully address either of these issues. Three of the four expert witnesses for the state had only limited contact with Rhode, all of which occurred during her post-conviction incarceration. A review of their testimony clearly demonstrates that none of these expert witnesses had examined her prior to her conviction and they never examined her to determine her competency to stand trial.

Carol Rowe, a correctional counselor at the Iowa Correctional Institution for Women in Mitchellville, Iowa, testified that she had seen Rhode, along with over a hundred other inmates, for a routine, administrative "review of her stay"; beyond that, most of her knowledge of Rhode's mental state came from incident reports prepared by other prison employees. Hrg. Tr. at 333.[2] Rowe did not express an opinion about Rhode's competency at the time of trial; she merely stated that she believed Rhode understood what was

---

**2.** All citations to expert testimony refer to the transcript of the post-conviction competency hearing held October 20, 1992.

"going on" while incarcerated. Hrg. Tr. at 338.

Leonard Welsh, a staff psychologist with the Iowa Department of Corrections, performed a psychological evaluation of Rhode at the outset of her post-conviction incarceration as part of her prison entrance evaluation. He did not examine her to determine her trial competency, and he was not even aware of her history of mental illness. Hrg. Tr. at 297, 304–05. When asked about Rhode's competency to stand trial, Welsh expressed serious doubt about his ability to form an opinion: "Since you are not there at the time, all you can do is make inferences; and to do anything other than that is to go beyond what you can say." Hrg. Tr. at 302. He did not explicitly express his opinion as to Rhode's competency at the time of the 1992 hearing; rather, based primarily on written records, he stated that in his opinion, Rhode did not suffer any significant form of mental illness. Hrg. Tr. at 302.

Peter Brainard, a psychologist at the Mitchellville prison, had twelve to fifteen psychotherapy sessions with Rhode during her incarceration and performed a mental status evaluation of her two years after her conviction. Hrg. Tr. at 323–24. When asked whether Rhode was currently suffering from a mental illness, Brainard answered that six months prior to the hearing she was not, but that he had "no basis for a judgment" as to her present mental condition. Hrg. Tr. at 325. Brainard never explicitly testified that Rhode was competent at the time of her trial, but only that he did not believe she had ever suffered from a mental illness during the two years he had contact with her at the prison. Brainard's testimony highlights, not only the inadequacy of his opinion as to Rhode's competency at the time of trial, but also the extreme difficulty in making these post-trial determinations generally.

Finally, Dr. Michael Taylor, the only state witness who testified that Rhode was competent both at the time of the hearing and when she stood trial, based his opinions solely on written records and a personal consultation with her just prior to the competency hearing. It is precisely this type of expert testimony, based on printed records alone, that the Supreme Court intended to discourage in *Pate v. Robinson*, 383 U.S. 375, 386–87, 86 S.Ct. 836, 842–43, 15 L.Ed.2d 815 (1966).

The Supreme Court of Iowa has consistently considered reversal of a defendant's conviction to be the appropriate remedy for violation of section 812.3. *See State v. Kempf*, 282 N.W.2d 704, 710 (Iowa 1979) (reversing defendant's conviction); *Hickey v. District Court of Kossuth County*, 174 N.W.2d 406, 412 (Iowa 1970); *see also, State v. Myers*, 460 N.W.2d 458, 460 (Iowa 1990) ("If the court of appeals was correct in concluding that matters known to the trial court mandated a hearing under section 812.3, then we believe the failure to hold such a hearing was probably not capable of being cured by an ex post facto determination of competency."). The instant decision by the Iowa intermediate appellate court is inconsistent with these clear precedents of the Iowa Supreme Court and does not, in my opinion, comport with Iowa Law. *See State v. Rhode*, 503 N.W.2d 27 (Iowa App.1993).

Because the opinions of the state witnesses were based primarily on limited, purely administrative, post-conviction contact with Rhode, the trial court was not able to conduct a meaningful competency hearing in this case. I believe that we must vacate Rhode's conviction to remedy the court's error at trial. The state, of course, may retry her if at the appropriate time and in the appropriate proceeding it is determined she is competent to stand trial.