173 Cal.App.4th 80 (2009)
___ Cal.Rptr.3d ___
THE PEOPLE, Plaintiff and Respondent,
v.
JAMES ARY, JR., Defendant and Appellant.
No. A113020.
Court of Appeals of California, First District, Division Two.
April 20, 2009.
*82 James Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacon and Joan Killeen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
KLINE, P. J.

INTRODUCTION
In People v. Ary (2004) 118 Cal.App.4th 1016 [13 Cal.Rptr.3d 482] (Ary), we determined that defendant was denied his due process right to a fair trial *83 under Pate v. Robinson (1966) 383 U.S. 375 [15 L.Ed.2d 815, 86 S.Ct. 836] (Pate) and People v. Pennington (1967) 66 Cal.2d 508 [58 Cal.Rptr. 374, 426 P.2d 942], because the trial court did not, on its own motion, order a hearing under Penal Code section 1368[1] to examine defendant's competency to stand trial despite substantial evidence that, due to his mental retardation, he was incapable of understanding the nature of the proceedings against him and of assisting in his defense. (Ary, at pp. 1020-1021.) Considering the "highly unusual nature of this case"due to the current availability of medical evidence of appellant's mental state at the time of trial produced during an inquiry into the voluntariness of his confessionwe concluded that this may be the "rare case" in which a meaningful competency determination may be conducted retrospectively (id. at pp. 1028-1029), and remanded the matter to the trial court to consider whether such a hearing could be conducted (id. at pp. 1029-1030). The trial court determined such a hearing was feasible. After conducting a competency hearing, the court found that defendant failed to prove, by a preponderance of the evidence, that he was incompetent to stand trial.
On this appeal, defendant contends that the trial court erred in placing on him the burden of showing that he was incompetent when tried and convicted. We agree.
(1) As we shall explain, the presumption of competency created by the Penal Code (§ 1369, subd. (f)) was designed to apply only to competency hearings conducted during the pendency of a criminal action, not to a postsentencing hearing conducted nunc pro tunc after a Pate violation. Because the fundamental fairness implicit in the concept of due process creates a rebuttable presumption of incompetency upon the vindication of a Pate claim, the burden at a retrospective hearing lies with the prosecution to show by a preponderance of the evidence that the defendant was competent to stand trial at the time he was tried. Accordingly, we shall vacate the finding of competency and remand the matter to the trial court to evaluate the evidence under the proper standard.

FACTUAL AND PROCEDURAL BACKGROUND
As the issues in this case do not turn on the underlying facts, we summarize them only briefly.
In December 2000, defendant was convicted of first degree murder, carjacking, robbery and being a felon in possession of a firearm. The jury also found true three special circumstances and a firearm use allegation. Defendant was subsequently sentenced to life without possibility of parole as well as *84 a consecutive, determinate sentence of 16 years four months. (Ary, supra, 118 Cal.App.4th at pp. 1019-1020.)
At pretrial hearings on the issue of whether defendant knowingly and voluntarily waived his Miranda rights and whether his subsequent confession to the murder charge was voluntary, the court received extensive evidence of defendant's mental state. It was this evidence that led us to determine the court erred in not holding a competency hearing. (Ary, supra, 118 Cal.App.4th at p. 1025.) In remanding the case for a determination of the feasibility of a retrospective competency hearing, we stated that "in those rare circumstances in which an appellate court remands for a determination of whether such a hearing can be held, the People must still convince the trial court that there is sufficient evidence on which a `reasonable psychiatric judgment' of defendant's competence to stand trial can be reached. [Citation.]" (Id. at p. 1029.) We declined to impose, as defendant urged us to do, a "`beyond a reasonable doubt' standard of evidentiary proof on the People as to this threshold matter."[2] (Ibid.)
On July 16, 2004, the court received evidence from the People regarding the feasibility of holding such a hearing, including a declaration of Dr. Howard Friedman, who had testified at defendant's trial. Defense counsel, who had also contacted several doctors who had testified at defendant's trial and believed they could offer an opinion retrospectively regarding his competence at that time, concurred "that sufficient evidence was available to render a reasonable psychiatric judgment of defendant's competence to stand trial." Accordingly, the court ruled on July 19, 2004, that the prosecution had met its burden and ordered a retrospective competency hearing.
In allocating the burden of proof at the retrospective competency hearing, the trial court initially declined to impose on defendant the presumption of competency prescribed at a section 1368 hearing by section 1369, subdivision (f), taking the position that the People would have the burden of proving by a preponderance of the evidence that defendant was competent at the time of trial, after which the burden would shift to defendant to establish pursuant to the same standard that he was not then competent to stand trial. After the People filed a motion for reconsideration challenging this allocation of the burden of proof, the court changed its mind. Ruling that section 1369, subdivision (f) applied, the court determined that defendant had the burden of showing incompetence by a preponderance of the evidence, and the People bear no burden at all.
After discovery was conducted, a retrospective competency hearing was held beginning on October 31, 2005, and concluding on November 8, 2005.
*85 Amy Morton, who was lead counsel for defendant at trial testified that although she had previously represented clients she suspected were not competent, none were mentally retarded or suffered a developmental disability and she had never requested or participated in a competency hearing under section 1368. Morton was brought into the case at a time when Linsey Freeman was lead defense counsel, and he told her that the defense strategy was to focus on the penalty not the guilt phase of trial, as there was "nothing going on" with respect to the issue of guilt. At that time Atkins v. Virginia (2002) 536 U.S. 304 [153 L.Ed.2d 335, 122 S.Ct. 2242], which presented the question whether a mentally retarded person could be subjected to the death penalty, was pending in lower federal courts, which is why the defense sought experts who specialized in mental retardation. Initially, Ms. Morton's role was to be confined to the guilt phase, and Freeman would handle the penalty phase, for which Freeman had created a "mental health team" of experts. On the few occasions during this period that Morton spoke with defendant she was unable to carry on a conversation with him, but felt he understood her.
In August of 1999, Freeman stepped down due to a perceived conflict of interest. Because the case was "old" and the trial judge was pushing for trial to begin, the presiding judge asked Morton whether she felt able to accept the role of lead counsel. She said she was and accepted the responsibility to find experienced cocounsel "who knew how to do penalty phases and handle mitigation evidence because I did not." John Costain was later brought into the case to play that role, which included working with the mental health experts.[3] At that time there was a consensus among the defense lawyers that defendant would not testify at the guilt phase. Morton reconsidered this issue because she felt defendant may have honestly and reasonably believed the victim had a gun, but this defense could not effectively be used unless defendant testified. However, when Morton and others working with her asked him about events relating to the offense defendant often did not understand their questions and was "[c]onstantly" unable to recall what had happened. Defendant was unwilling to testify due to his failure to understand what difference it would make and because he was not "good with words."
*86 Everyone on the defense team felt defendant was mentally retarded and had serious learning disabilities. Morton did not know whether any of the experts consulted by the defense team had evaluated defendant's competency to stand trial, but "assumed he had been put through an evaluation because it was never raised." Freeman had given Morton materials on mental retardation, but she had only "skimmed through it." Dr. Timothy Derning, one of the experts retained by the defense, told Morton that the fact that defendant was incompetent to enter pleas to his prior offenses did not mean he was incompetent to stand trial at the time he was convicted of the present offense. Morton had not been trained in the assessment of competency to stand trial at the time she represented defendant, and had a limited understanding of the legal formulation of competency set forth in Dusky v. United States (1960) 362 U.S. 402 [4 L.Ed.2d 824, 80 S.Ct. 788], which she did not then understand to include developmental disability. Having since "taken classes" and "read the case law," Morton now believes defendant was incompetent to stand trial at the time he was convicted.
Forensic psychologists Timothy Derning and John Podboy also testified for the defense; both had evaluated defendant's mental state as it related to the voluntariness of his confession. Dr. Derning explained that, because mentally retarded and developmentally disabled persons are better able to "mask" their deficiencies than psychotics, their competence is more difficult to evaluate and must be assessed in a more sophisticated manner, with greater emphasis on language, memory, cognitive functioning, and problem solving. Dr. Derning interviewed defendant four times prior to trial and subjected him to tests designed to evaluate his abstract reasoning skills, recall, use of language, and vocabulary. Based on his clinical interviews, the tests he administered, and his observations of defendant's interactions with defense counsel, Dr. Derning concluded that defendant suffered significant cognitive impairment and that his mental functioning "was typical of people with mental retardation," a conclusion shared by experts at the Department of Developmental Services's Regional Center of the East Bay. Defendant "rarely, if ever," correctly answered specific questions about his case and "demonstrated that he didn't understand what was going on." Although Dr. Derning did not at the time of trial "administer any tests specifically designed to measure [defendant's] trial competency," which is governed by criteria different from those applicable to the voluntariness of a confession,[4] he concluded that defendant was incompetent due to his "low functioning, *87 low adaptive skills, [and] poor reasoning abilities," which rendered him unable "to think hypothetically," to "follow the give and take in the courtroom," and to understand questions put to him regarding his case. He would have given this opinion at the time of defendant's trial in 2000, had he been asked.
Dr. Podboy, who examined defendant on four occasions at or about the time of trial, had assessed competence to stand trial more than a thousand times and frequently qualified as an expert on trial competence related to mental retardation. Dr. Podboy's conclusion that defendant was "obviously not competent" to stand trial was primarily based on "factual criteria" relating to his ability to understand "the roles and responsibilities of the various court officers, including the role of the jury," his poor language skills, and his inability to understand the nature of the defenses to be presented and otherwise assist counsel. According to Dr. Podboy, defendant "did not know the function of court participants and could not meaningfully participate in his trial. He could not assist in defenses.... Neither attorney [representing defendant in 2000] asked nor did he [then] give an opinion regarding [defendant's] competency to stand trial."[5]
The People relied on the testimony of four forensic psychologists, Drs. Paul Good, Edward Hyman, Friedman, and Paul Berg, none of whom had examined defendant at the time of trial.
Dr. Good interviewed defendant to determine his current competency and found him mildly mentally retarded. In Good's opinion, mild mental retardation does not mean that a defendant is incompetent. Based on his interviews with defendant, the tests he conducted, and his review of the trial transcript, he concluded that defendant's "capacity to reason and learn between the time of his trial and [the present]" was "unchanged."
Dr. Hyman reviewed, among other things, defendant's trial and pretrial testimony and the medical reports of Dr. Karen Franklin (who had examined defendant in 2005) and Dr. Good. He was also aware of the legal principles involved in a competency determination and concluded that, in his opinion, defendant was competent at trial.
*88 Dr. Friedman, a neuropsychologist who studies brain functioning and behavior and has in the past assessed trial competency, testified at defendant's 2000 trial regarding defendant's mental condition. In Dr. Friedman's opinion, defendant was competent in 2000 to stand trial. He based his opinion on the following facts, summarized by the trial court in its statement of decision as follows: "[Defendant's] testimony at both proceedings [trial and pretrial] demonstrated that he could define who witnesses were, he had a good memory of the events, he reflected on his testimony, he testified for an extended period, and he decided to testify after consultation with his counsel. He also believed that [a] letter written by [defendant to his attorney] displayed an ability to reason. He knew his attorney was watching out for his interests."
Dr. Berg, who testified in defendant's trial in 2000 regarding the issue of whether defendant knowingly and intelligently waived his Miranda rights,[6] testified that, in his opinion, defendant was, at that time, "competent to stand trial."
The trial court found that defendant had "failed to prove, by a preponderance of the evidence, that he was incompetent to stand trial." "Most importantly," the court stated, "in addition to relying just on test scores and interviews of Mr. Ary, which are artifacts of what Mr. Ary's potential mental abilities might be, Drs. Hyman, Friedman, and Berg were able to provide to the court specific examples of Mr. Ary's cognitive abilities before, during and after his trial which directly demonstrated that Mr. Ary, at the time of his trial, could, and did, rationally consult and assist with his counsel, had a rational and factual understanding of the charges against him, and had a factual and rational understanding of the criminal proceedings."
The court also discussed a test administered to Ary designed to measure potential mental abilities and "specifically designed to measure the intellectual functioning of a mentally retarded individual in the context of a criminal proceeding." The court summarized the results of this test: "Mr. Ary's test scores not only exceeded what one would expect of a mentally retarded person who is deemed competent but came within one and one-half points of the score one would expect of those persons who are not mentally retarded."
For the foregoing reasons, the court concluded that defendant had failed to prove by a preponderance of the evidence that he was incompetent to stand trial.
This timely appeal followed.

*89 DISCUSSION
As earlier noted, the trial court initially determined that the prosecution would have the burden to prove by a preponderance of the evidence that defendant was competent to stand trial at the time he was convicted. The court changed its mind, however, after being persuaded by the district attorney that the procedure for conducting a competency determination was that prescribed by section 1369, which provides that "[i]t shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent." (§ 1369, subd. (f).) As the district attorney emphasized, imposition of that burden was approved by the United States Supreme Court in Medina v. California (1992) 505 U.S. 437 [120 L.Ed.2d 353, 112 S.Ct. 2572] (Medina). The Attorney General advances the same argument here, but relies additionally on the majority opinion in Moran v. Godinez (9th Cir. 1994) 57 F.3d 690 (Moran).
(2) We reject the People's argument. As we shall explain, section 1369 describes the nature of the hearing which, pursuant to section 1368, must be held at the time of trial when "a doubt arises in the mind of the judge as to the mental competence of the defendant." Sections 1368 and 1369 do not purport to apply to a retrospective competency hearing after a Pate violation, a proceeding unknown in California at the time the statutes were enacted. The presumption of competency specified in section 1369, subdivision (f), therefore does not represent a legislative determination that such a presumption also applies at a retrospective competency hearing. Medina is factually inapposite, because it involved a contemporaneous, not a retrospective, competency determination; moreover, the reasoning of the opinion undermines the People's argument. Finally, we decline to follow the majority opinion in Moran, which conflicts with James v. Singletary (11th Cir. 1992) 957 F.2d 1562 (James), because it is unsupported by Medina and inconsistent with the requirements of due process and the rule of Pate, supra, 383 U.S. 375.

I.
As indicated, allocation of the burden of proof at a retrospective competency hearing is an issue that has never been addressed by our Legislature (nor has it been addressed by Congress[7] or, apparently, by the legislatures of many states, if any). The presumption of competency prescribed by section 1369, subdivision (f), appears in chapter 6 of title 10 of part 2 of the Penal *90 Code, which as stated in section 1367, is designed to insure that "[a] person cannot be tried or adjudged to punishment while that person is mentally incompetent." (§ 1367, subd. (a).) Section 1368 provides that "[i]f, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant" or "[i]f counsel informs the court that he or she believes the defendant is or may be mentally incompetent," the court shall suspend all proceedings in the criminal prosecution "until the question of the present mental competence of the defendant has been determined."[8] (§ 1368, subds. (a)-(c), italics added.) Section 1368 also provides "that the question of the defendant's mental competence" is ordinarily "to be determined in a hearing which is held pursuant to Section[] ... 1369." (§ 1368, subd. (b).) The sole purpose of section 1369 is to define the "order of proceedings" of the "[t]rial of issue of mental competence" required by section 1368 to take place prior to judgment in an original criminal proceeding. Section 1370 provides that, if, at a section 1368 hearing conforming to the requirements of section 1369, "the defendant is found mentally competent, the criminal process shall resume, the trial on the offense charged shall proceed, and judgment may be pronounced"; otherwise "the trial or judgment shall be suspended until the person becomes mentally competent" (§ 1370, subd. (a)(1)(A), (B)). Thus, the language of the provisions that comprise chapter 6 of title 10 of part 2 of the Penal Code including the presumption of competence set forth in subdivision (f) of section 1369were intended to apply to competency hearings held prior to trial or sentencing. As the Penal Code does not expressly authorize a retrospective hearing, and at the time sections 1368 and 1369 were enacted no California court had authorized such a hearing, there is no basis for inferring the Legislature was even aware of the issue of retrospective hearings, much less that it intended the statutes to extend beyond their express terms.
We were in Ary, supra, 118 Cal.App.4th 1016, the first California court to authorize such a hearing, and we did not there address the burden of proof applicable at such a proceeding.
*91 Pointing out that section 1369 was amended twice after our decision in Ary (Stats. 2004, ch. 486, § 1, and Stats. 2007, ch. 556, § 2)[9] and that the Legislature must be presumed to then have known of our construction of section 1369, our dissenting colleague argues that "[i]f the Legislature had, at either time, wanted to clarify that neither [subdivision (f)] nor any of section 1369's five other subdivisions applied to a retrospective competency hearing, it could easily have done so." (Dis. opn., post, at p. 107.) We are unpersuaded by this argument. Our opinion in Ary never even cites section 1369, let alone construes it as applying to a retrospective hearing. The portion of the Ary opinion the dissent relies upon is that in which, after determining that defendant was improperly denied his right to a section 1368 hearing at the time of trial, we concluded that "inquiry into the persuasiveness and weight to be given the substantial evidence of defendant's competence is made at the competency hearing, not at this point." (Ary, supra, 118 Cal.App.4th at p. 1025.) Justice Haerle maintains that "our meaning was unmistakable" that the hearing we later ordered was that required by section 1368, and that it was to be, "clearly, pursuant to the specific procedures set forth in section 1369." (Dis. opn., post, at p. 105.) That meaning is far from clear to us, however, and it was unclear as well to the trial court, which initially ruled that the presumption of competency prescribed by subdivision (f) of section 1369 did not apply to a retrospective hearing. The issue of which party has the burden of proof at a retrospective hearing with respect to the issue of competency was never at issue or raised by any party in Ary, and we simply did not address it. All we said there about the burden of proof is that "the People will have the burden of establishing that a retrospective competency hearing can be held." (Ary, supra, 118 Cal.App.4th at p. 1029, italics added.) Since Ary says nothing at all about the burden of proof on the issue of competency after a Pate violation, the Legislature's presumed acquiescence in our opinion hardly signifies a legislative position on that issue. Nor does the Attorney General make such a claim.[10]
The fact that section 1369 was not designed to apply to a retrospective competency hearing does not, of course, prevent a court conducting such a hearing from adhering to such of its provisions as would not impermissibly abridge a defendant's due process rights. Aside from the presumption of competency and the order in which the conflicting evidence of competency and the final arguments of counsel are presented, the provisions of section 1369 relate primarily to the appointment of experts to examine the defendant *92 prior to the hearing, the nature of the mental examinations that must be undertaken, and the treatment of the defendant with antipsychotic medication if that is medically appropriate and may restore him or her to mental competence. (§ 1369, subd. (a).) In cases in which it is suspected that the defendant is developmentally disabled, subdivision (a) also requires examination of the defendant by the director of the regional center for the developmentally disabled. (See Welf. & Inst. Code, §§ 4620, 4621.) The requirements of subdivision (a) were satisfied in this case without any objection. Nothing in this opinion suggests that subdivision (a), or any other provision of section 1369 unrelated to the presumption of competence, may not be applied at a retrospective competency hearing.
Having determined that the presumption of competency set forth in subdivision (f) of section 1369 was not intended by the Legislature to apply to retrospective competency determinations, we turn to the chief issue in this case: whether, as defendant claims, imposition on him of the burden of proving incompetency was unreasonable and fundamentally unfair, so as to deprive him of due process.

II.
The Attorney General argues that although it does not address the burden and standard of proof at a retrospective competency hearing, Medina, supra, 505 U.S. 437, shows that placing the burden on the defendant to prove his incompetency at such a hearing is consistent with the requirements of due process.
As the Attorney General acknowledges, Medina deals exclusively with the burden of proof at a competency hearing held at the time of trial or sentencing, not with the burden of proof at a retrospective hearing conducted after the denial of a contemporaneous hearing in violation of Pate. The court's analysis commences with the observation that "there remains no settled view of where the burden of proof should lie" at a contemporaneous hearing. (Medina, supra, 505 U.S. at p. 447.) While California and courts in some other states place the burden of proof on the defendant to show current incompetency,[11] the majority of state courts that have addressed the issue have held that the burden of proving present competency rests with the prosecution.[12] (Miller & Germain, The Retrospective Evaluation of *93 Competency to Stand Trial (1988) 11 Int'l J.L. & Psychiatry 113, 121 ["burden of proof now generally assigned to the state to establish a defendant's competency, both pre- and post-trial"].)
Unlike the state statutory scheme, the counterpart federal statute (18 U.S.C. § 4241) does not create a presumption of competency at a contemporaneous (or retrospective) competency hearing. Due to the absence of such a presumption, and because incompetency can be raised by the government as well as by the defendant, the federal statute does not explicitly allocate the burden of proof to the government or the defendant. However, although a few federal courts have, without explanation, declared that the burden of proving present incompetence should be judicially placed on the defendant,[13] the overwhelming majority have declared that in federal prosecutions the burden must be placed on the government to prove competency, not only at a contemporaneous competency hearing,[14] but also at a retrospective hearing.[15] As stated in United States v. Makris, supra, 535 F.2d 899, "[t]here can be no question that *94 in federal criminal cases the government has the burden of proving defendant competent to stand trial at the § 4244 [now § 4241] hearing or its nunc pro tunc substitute." (Id. at p. 906.) Indeed, the prohibition on placing the burden of proving incompetency on the defendant is so strong in federal jurisprudence that it applies even in habeas corpus cases despite the general rule that the petitioner in a habeas corpus proceeding bears the burden of proving that his conviction is illegal. (United States v. Hollis, supra, 569 F.2d 199, 205.)
(3) The issue presented in Medina was whether, despite the different practice in federal courts and many other jurisdictions, California may require a defendant to bear the burden of proving incompetence at a contemporaneous hearing without injury to the due process clause of the Fourteenth Amendment. Prior to trial, Medina's counsel moved for a competency hearing under section 1368, on the ground he was unsure whether his client had the ability to participate in the proceedings against him and, unlike in the present case, such a hearing was conducted. At the close of the competency hearing, pursuant to subdivision (f) of section 1369, the court instructed the jury that "`the defendant is presumed to be mentally competent and he has the burden of proving by a preponderance of the evidence that he is mentally incompetent as a result of mental disorder or developmental disability.'" (Medina, supra, 505 U.S. at p. 441, quoting § 1369, subd. (f).) In the United States Supreme Court, Medina claimed that California's allocation of the burden of proof in hearings on a defendant's present competency to stand trial does not comport with due process. The court disagreed, explaining that the allocation of the burden of proof in a contemporaneous competency hearing is not of constitutional dimension. The test for whether a state procedure violates due process is that of the fundamental fairness implicit in the concept of due process, and no principle of fundamental fairness is violated by placing the burden of proof on the defendant at a competency hearing he or she received prior to trial or sentencing. (Medina, at pp. 446-451.) Thus, the court concluded that though most federal and state courts place the burden of proof on the state at a contemporaneous competency hearing, and "reasonable minds may differ as to the wisdom of placing the burden of proof on the defendant in these circumstances" (id. at pp. 450-451), California was free to do otherwise.
As will be seen, the analysis in Medina does not support a presumption of competence in the "rare cases" (Ary, supra, 118 Cal.App.4th at p. 1028) in which a retrospective hearing may be conducted after a Pate violation, because such hearings involve a paradigm significantly different in crucial particulars from that presented and analyzed in Medina.
Mindful that "[i]n all kinds of litigation it is plain that where the burden of proof lies may be decisive of the outcome" (Speiser v. Randall (1958) 357 U.S. 513, 525 [2 L.Ed.2d 1460, 78 S.Ct. 1332]), the Medina court *95 focused upon whether, in operation, allocation of the burden of proof to the defendant in a proceeding to determine his or her present competency transgresses any recognized principle of "`"fundamental fairness."'" (Medina, supra, 505 U.S. at p. 443.) After an inquiry carefully balancing the competing considerations, the Medina court essentially concluded that it is not fundamentally unfair to cast on the defendant the responsibility to rebut the presumption of competence that exists at the time of trial because the burden of proof is determinative in such proceedings "only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is competent." (Medina, at p. 449, citing United States v. DiGilio, supra, 538 F.2d 972, 988.)
In short, the Medina court concluded that California was free to place the burden of proof on the defendant at a contemporaneous competency hearing because the issue of competency rarely presents a close question at such hearings, so that it is not fundamentally unfair to impose the burden on the defendant.
(4) The situation analyzed in Medina is, however, very different from that in which a retrospective competency hearing is necessitated by a Pate violation; that is, after a defendant has shown to the satisfaction of a reviewing court that the evidence at trial raised a "`bona fide doubt'" as to the defendant's competence to stand trial. (Pate, supra, 383 U.S. at p. 385.) While the presumption of competency is reasonable when, at the time of trial or sentencing, no evidence of incompetency has been offered and the matter has not been adjudicated, that is no longer the case after a Pate violation, where a showing of incompetence was made and the matter was preliminarily adjudicated.
(5) Pate violations are, of course, unlikely when there is strong evidence of competency (in which case it is clear to all that a competency inquiry is unnecessary) or of incompetency (in which case a competency hearing is most likely sought and provided). Such violations most commonly occur where the defendant's incompetency is not manifest and the conflicting evidence as to that issue is in equipoise. For this reason, the placement of the burden of proof will be the determinative factor in most cases in which competency is determined ex post facto after a Pate violation, and if it is placed on the defendant he or she will rarely, if ever, be able to sustain it.[16] *96 This is inconsistent with the fundamental fairness implicit in the constitutional concept of due process. If a defendant who has succeeded in demonstrating that there was serious doubt about his competency at the time he was tried and convicted can be retrospectively deemed competent, it should not be on the basis of a failure of his or her proof, but on the basis of an affirmative showing of competency by the state. In Pate, the Supreme Court soundly rejected the notion that a defendant about whom there was a competency question could waive his incompetency. (Pate, supra, 383 U.S. at p. 384.) Because the defendant in Pate was represented by counsel, the opinion implies that counsel could not waive or stipulate competency on behalf of his client. The logic of Pate therefore strongly suggests that a court cannot resolve the competency issue simply on the basis of a failure of proof.
In reaching its conclusion that California courts could allocate the burden of proof to the defendant at a contemporaneous hearing, the Medina court emphasized the significance of the fact that the court did not deprive Medina of his due process right to a fair trial because it provided him pretrial "`procedures adequate to protect [his] right not to be tried or convicted while incompetent to stand trial.'" (Medina, supra, 505 U.S. at p. 449.) When that is done, the court concluded, there is "no basis for holding that due process further requires the State to assume the burden of vindicating the defendant's constitutional right by persuading the trier of fact that the defendant is competent to stand trial." (Ibid.) However, in the present case, as in all in which the defendant's Pate rights were violated, the defendant was deprived of his due process right to a fair trial, because the court failed to observe procedures adequate to protect his right not to be tried while incompetent at the time at which a competency determination could most confidently have been made. It is the trial court's failure to conduct a competency hearing at that time that creates the need for a retrospective hearing years later, when the available evidence is almost never as reliable as that which was available at the time of trial, when the defendant's present competency could have been tested and assessed by both prosecution and defense experts.[17] Since the state is itself at least partially responsible for the Pate violation, it bears some responsibility for the difficulties that violation imposes on the defendant. (Cf. Zapata v. Estelle (5th Cir. 1979) 588 F.2d 1017, 1020.)
There is yet another way in which Medina indicates that it would be unfair to allocate the burden of proof at a retrospective hearing to the defendant. *97 The Medina court differentiated the situation before it from that in cases in which the government had violated a defendant's constitutional rights. (Medina, supra, 505 U.S. at pp. 451-452, citing Colorado v. Connelly (1986) 479 U.S. 157 [93 L.Ed.2d 473, 107 S.Ct. 515] [burden of proof on state to show waiver of Miranda rights]; Nix v. Williams (1984) 467 U.S. 431 [81 L.Ed.2d 377, 104 S.Ct. 2501] [burden of proof on state to show inevitable discovery of evidence obtained by unlawful means]; United States v. Matlock (1974) 415 U.S. 164 [39 L.Ed.2d 242, 94 S.Ct. 988] [burden on government to show voluntariness of consent to search]; Lego v. Twomey (1972) 404 U.S. 477 [30 L.Ed.2d 618, 92 S.Ct. 619] [burden on state to show voluntariness of confession].) The burden of proof was placed on the state in those cases to deter it from abridging constitutional rights in the course of carrying out its investigatory responsibilities. There is no need for such deterrence where, as in Medina, the state properly carries out its responsibility to immediately inquire into the competency of a defendant when "bona fide doubt" is presented. That is not the case, however, when, despite reason for such doubt at the time of trial, an investigation is not then undertaken. Shifting the burden to the state at a retrospective hearing necessitated by the abridgment of a defendant's due process right to a contemporaneous competency determination would deter such investigative errors and thereby diminish the likelihood of Pate violations.[18]
The analytical approach adopted by the Medina court is that set forth in Patterson v. New York (1977) 432 U.S. 197 [53 L.Ed.2d 281, 97 S.Ct. 2319]. (Medina, supra, 505 U.S. at p. 445.) In Patterson, the Supreme Court engaged in the balancing prescribed in Morrison v. California (1934) 291 U.S. 82 [78 L.Ed. 664, 54 S.Ct. 281], the seminal opinion on allocation of the *98 burden of proof in criminal proceedings. Morrison stands for the proposition that where the evidence is in equipoise "the promotion of convenience from the point of view of the prosecution will be outweighed by the probability of injustice to the accused." (Id. at p. 94.) As Justice Cardozo explained, "[t]he decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression." (Id. at pp. 88-89.)
It is reasonable to conclude, as did the Medina court, that the foregoing principle allows allocation to the defendant of the burden of showing incompetency at a contemporaneous competency hearing, when a presumption of competence is not unfair. But it seems to us difficult to think the principle allows that allocation of the burden at a retrospective hearing after a Pate violation. Where the defendant's competency was not examined at trial despite reason to do so, the state has not "proved enough" that it would be just to require the defendant to "repel." Indeed, where there has been a Pate violation the state has not proved anything at all regarding the defendant's competency to stand trial. The only party that has in that situation made any persuasive showing on the issue of competency is the defendant, who demonstrated that there was "bona fide doubt" about his or her competency at the time of trial that should then have been investigated. As defense counsel essentially argued to the trial court here, that is "enough" to render it entirely fair and necessary to require the state to repel the evidence of possible incompetency produced by the defendant in support of his Pate claim. While imposing the burden of proving incompetency on the defendant would certainly "aid the accuser," it just as certainly would not do so "without subjecting the accused to hardship or oppression." (Morrison v. California, supra, 291 U.S. at pp. 88-89.)
James, supra, 957 F.2d 1562, is one of the few opinions focusing upon the portion of Pate relating to the relief available to a defendant who has successfully established deprivation of the right to a competency hearing at the time of trial or conviction. The opinion in that case explains why a retrospective or "nunc pro tunc [competency] hearing is nothing but a harmless error determination in disguise" (id. at p. 1571, fn. 14), and that, because the state is responsible for the error, it is only fair to require it to show that the error was harmless. Although James was decided three months before Medina, nothing in Medina conflicts with its reasoned analysis.
*99 (6) As explained in James, "there are two kinds of incompetency claims. First, a petitioner may allege that the trial court denied him or her due process by failing sua sponte to hold a competency hearing. This is a Pate claim. Second, a petitioner may allege that he or she was denied due process by being tried and convicted while incompetent. This is a substantive claim of incompetency." (James, supra, 957 F.2d at p. 1571.) James emphasizes that the defendant in Pate "did not raise, and the Supreme Court did not consider, a substantive claim of actual incompetency. Looking solely to the facts available to the trial judge, the Court ordered the district court to issue the writ without having considered other evidence of actual incompetency. [Citation.] [¶] The Supreme Court declined to allow the state to cure the established due process defect by conducting a nunc pro tunc competency hearing in state court, which in Illinois would have been held before a jury. [Citation.] In rejecting this remedy, the Supreme Court pointed to the difficulties of retrospectively determining competency at the time of trial, including the passage of time (six years in Robinson's case) and the new jury's obvious inability to observe the defendant at the time of trial. [Citation.]" (James, at p. 1570.)
The point of the opinion in James is that while a defendant may be required to bear the burden of proving a substantive claim of incompetency at a time at which no evidence of incompetency has been offered, that is not the case with respect to a defendant whose Pate claim succeeded, because that claim could not have succeeded without substantial evidence establishing "bona fide doubt" of the defendant's competency to stand trial. As James says, Pate "put another spin on the already well-established prohibition against trying and convicting an incompetent defendant. Pate, in essence, established a rebuttable presumption of incompetency upon a showing by a habeas petitioner that the state trial court failed to hold a competency hearing on its own initiative despite information raising a bona fide doubt as to the petitioner's competency. According to Pate, the state could rebut this presumption by proving that the petitioner in fact had been competent at the time of trial." (James, supra, 957 F.2d at p. 1570, fn. omitted.) "To put it bluntly, a Pate claim is a substantive incompetency claim with a presumption of incompetency and a resulting reversal of proof burdens on the competency issue." (Id. at pp. 1571-1572, fn. omitted, italics added.) In short, vindication of a Pate claim operates to shift the burden of proof from the defendant to the state.
The Attorney General argues that we should not follow James but instead the majority opinion in Moran, supra, 57 F.3d 690, which reaches a different conclusion on the ground that the analysis in James was upended by the decision in Medina three months later. We are not bound by Moran, but would follow it if we found it persuasive. We do not. Neither the Moran majority nor the Attorney General provides any reason to think Medina is *100 inconsistent with James. In our view, the compelling reasoning of James is entirely compatible with that of Medina.
The Moran majority concludes that, though Medina deals only with pretrial competency determinations, its holding is nevertheless "equally applicable to retrospective competency hearings" because such a hearing can only take place if the prosecution has established "that a petitioner's competence can be accurately evaluated retrospectively." (Moran, supra, 57 F.3d at p. 697, italics added.) This statement, which is the cornerstone of the court's analysis, seems to us little more than an ipse dixit.[19] The unexplained idea that it is sufficient for due process purposes, i.e., fundamentally fair, to relieve the state of the burden of proving competency simply because it sustained the burden of showing that a retrospective hearing to remedy a Pate violation is feasible, does not stand up to analysis.
The unarticulated assumption of Moran and the few other courts that have specifically held that the burden of proof lies with the defendant at a retrospective hearing (see, e.g., cases cited and briefly discussed, ante, at p. 100, fn. 19) is that a retrospective competency hearing is no different from the contemporaneous hearing discussed in Medina, supra, 505 U.S. 437, *101 because a retrospective hearing cannot be conducted unless the People have first shown that a meaningful nunc pro tunc hearing can be held despite the passage of years. The proposition was stated explicitly in Tate v. State (1995) 1995 OKCR 24 [896 P.2d 1182], as follows: "A retrospective competency determination is only feasible in those cases where credible and competent evidence still exists. Thus, inherent in a finding of feasibility is the conclusion that the defendant will be placed in a position comparable to the one he would have been placed in prior to the original trial. Under these circumstances, no due process violation occurs by ultimately placing the burden of proving incompetency on the defendant in a retrospective competency hearing." (Id. 896 P.2d at pp. 1187-1188.) This rationale completely ignores the factor that bears most directly on the due process problem upon which Medina focuses, which is not the quality of the evidence but the closeness of the question of competency.
In order to establish that a retrospective determination is feasible the state is not required to show that it will result in as accurate an evaluation of competency as could have been made at the time of trial, as Tate and Moran erroneously suggest.[20] In this jurisdiction the district attorney need only establish that "`the record contains sufficient information upon which to base a reasonable psychiatric judgment.'" (Ary, supra, 118 Cal.App.4th at p. 1027, quoting Odle v. Woodford (9th Cir. 2001) 238 F.3d 1084, 1089.) Reasonable psychiatric judgments can differ, however, and the existence of conflicting judgments about competency that are equally reasonable gives no cause to think the burden of proof will not often matter, or to justify relieving the district attorney of the responsibility to rebut the substantial evidence of incompetency marshaled by the defendant to vindicate his or her Pate claim. Even indulging the wholly unwarranted assumption that the amount and quality of evidence bearing on competency available at retrospective hearings is always as great as that which was available at the time of trial or sentencing, retrospective hearings will always involve a factor rarely present at a contemporaneous competency hearing. A retrospective hearing necessitated by the vindication of a Pate claim is held only after the defendant has shown that, despite the existence of evidence raising a reasonable doubt about the defendant's competence to stand trial, counsel failed to request and the trial court failed to conduct an appropriate inquiry. As discussed above, such *102 a failure of court and counsel regularly occurs only in cases in which the question of competence is close, and the burden of proof will therefore be determinative.
As previously noted, this case is illustrative. Defendant's counsel all felt his inability to understand their questions was the result of his mental retardation, but they were unaware of the extent to which his mental deficiencies may have rendered him incompetent to stand trial. So, too, did the court fail to apprehend what we described in Ary as "substantial evidence" that defendant lacked a rational or factual understanding of the proceedings against him and the ability to consult with his lawyer with a reasonable degree of rational understanding (Ary, supra, 118 Cal.App.4th at p. 1023). The fact that the experts sharply disagreed about the relationship between defendant's mental retardation and his competence to stand trial is unsurprising given the scientific uncertainty about that relationship (see discussion, ante, at p. 95, fn. 16), and even whether a particular individual fits within the definition of mental retardation (see, e.g., Atkins v. Virginia, supra, 536 U.S. 304, 309 [expert opined that defendant deemed mentally retarded by other experts and the court "was not mentally retarded, but rather was of `average intelligence, at least'"]). The defense experts, both of whom had personally evaluated appellant at the time of trial, felt very strongly that, as Dr. Podboy testified, defendant was "obviously not competent" when tried and convicted. The People's experts, none of whom had personally assessed defendant, felt very differently.
This case thus shows that the abundance of available evidence does not at all diminish the due process problem Pate cases present, which is that, due to the fact that the question of competency will usually be close, it is fundamentally unfair to impose on the defendant a burden of proof he or she will rarely be able to sustain. Our "underlying premise" is not, as the dissent says, "that retrospective competency hearings always have been and should continue to be `disfavored'" (dis. opn., post, at p. 114),[21] but that, unlike defendants whose competency is determined at the time of trial, defendants whose competency is determined at a retrospective hearing belong to a class whose competency will invariably be determined by the burden of proof. Because *103 the feasibility of the retrospective hearing does not in and of itself bear on the competency vel non of the defendant, it provides no logical reason to preserve the presumption of competency in the wake of a Pate violation.
As Medina explains, due process allows imposition of the burden of showing incompetency on the defendant at the time of trial because (1) the defendant is provided a proceeding at which to inquire into competency, when the most reliable evidence is most readily available; (2) the evidence of competency at such hearings is rarely in equipoise and the burden of proof therefore rarely matters; and (3) the defendant has not, prior to the contemporaneous hearing, made a showing of incompetency that the People should have been required to rebut. (Medina, supra, 505 U.S. at p. 449.) As we have explained, none of those things are true in cases in which a retrospective hearing is necessitated by a Pate violation. In this situation, the defendant was deprived of a competency determination when the most reliable evidence was most readily available, the deprivation indicates that the conflicting evidence of competency was likely in equipoise, and, most importantly, the defendant has produced substantial evidence that "bona fide doubt" of competency existed at the time of trial, a showing the People should in fairness be required to rebut. For these reasons, the theory that, because it has been deemed feasible, a retrospective competency hearing is no different from a contemporaneous hearing is manifestly untenable.
(7) As the Supreme Court has stated, "[t]he individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." (Addington v. Texas (1979) 441 U.S. 418, 427 [60 L.Ed.2d 323, 99 S.Ct. 1804]; accord, Speiser v. Randall, supra, 357 U.S. 513, 525-526.) Given the well known "difficulty of retrospectively determining an accused's competence to stand trial" (Pate, supra, 383 U.S. at p. 387; see Dusky v. United States, supra, 362 U.S. at p. 403; Drope v. Missouri, supra, 420 U.S. 162, 183), the risk to the individual that a retrospective evaluation will produce an inaccurate assessment is substantial. As a unanimous Supreme Court has pointed out, "[f]or the defendant, the consequences of an erroneous determination of competence are dire. Because he lacks the ability to communicate effectively with counsel, he may be unable to exercise other `rights deemed essential to a fair trial.'" (Cooper v. Oklahoma, supra, 517 U.S. at p. 364; see also Riggins v. Nevada (1992) 504 U.S. 127, 139 [118 L.Ed.2d 479, 112 S.Ct. 1810] (conc. opn. of Kennedy, J.).)
On the other hand, "the injury to the State of the opposite errora conclusion that the defendant is incompetent when he is in fact malingeringis modest. To be sure, such an error imposes an expense on the state treasury and frustrates the State's interest in the prompt disposition of *104 criminal charges. But the error is subject to correction in a subsequent proceeding and the State may detain the incompetent defendant for `the reasonable period of time necessary to determine whether there is a substantial probability that he will attain [competence] in the foreseeable future.'" (Cooper v. Oklahoma, supra, 517 U.S. at p. 365, quoting Jackson v. Indiana (1972) 406 U.S. 715, 738 [32 L.Ed.2d 435, 92 S.Ct. 1845].) And if the defendant does return to competency he or she can be retried.

DISPOSITION
For the foregoing reasons, the case is remanded to the trial court to evaluate the evidence under the proper burden of proof.[22] If, after imposing that burden, the court determines defendant was competent to stand trial at the time he was tried and convicted, it shall reinstate the judgment. If it concludes defendant was not then competent, it shall entertain such appropriate motions as may be made by the parties.
Lambden, J., concurred.
HAERLE, J., Dissenting.
I respectfully dissent. I do so because I believe the majority's decision in this case comes perilously close to judicial legislation. Its holding is flatly contrary to (1) a specific provision of our Penal Code, (2) a decision of the United States Supreme Court which affirmed a decision of our Supreme Court, and (3) clearly-on-point decisions of no less than five federal and state appellate courts. Going in the opposite direction from all these authorities, the majority holds, contrary to the express provision of Penal Code section 1369, subdivision (f) (section 1369(f)), that the burden of proof in the retrospective competency hearing this court authorized in People v. Ary (2004) 118 Cal.App.4th 1016 [13 Cal.Rptr.3d 482] (Ary I) lies with the prosecution.

I.
As noted above, the first thing I believe is wrong with the majority's opinion is its conclusion that section 1369(f) does not apply here. That subdivision reads, in pertinent part: "It shall be presumed that the defendant *105 is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent." (§ 1369(f).) We may disregard those words, the majority concludes, because both that section and its immediate predecessor, Penal Code section 1368 (section 1368), apply only to "competency hearings conducted during the pendency of a criminal action, not to a postsentencing hearing conducted nunc pro tunc after a Pate[v. Robinson (1966) 383 U.S. 375 [15 L.Ed.2d 815, 86 S.Ct. 836] (Pate)] violation." (Maj. opn., ante, at p. 83.)
I respectfully suggest that there are numerous, serious problems with this contention.
Perhaps the best place to start is with our decision of five years ago in Ary I. In that decision, we not only cited section 1368 twice (see Ary I, supra, 118 Cal.App.4th at p. 1024),[1] but specifically held that itand, quite obviously, the purely procedural section 1369 following itapplied in this case. We stated: "The People also discuss, at great length, evidence in the record of defendant's competence and suggest this evidence of competence undermines defendant's argument that the record contains substantial evidence of incompetence. While the evidence cited by the People may be meaningful at a competency hearing, it is quite clear that once substantial evidence of incompetence appears, the court is required to order a hearing, `"no matter how persuasive other evidencetestimony of prosecution witnesses or the court's own observations of the accusedmay be to the contrary. . . . [¶] [W]hen defendant has come forward with substantial evidence of present mental incompetence, he is entitled to a section 1368 hearing as a matter of right . . . . The judge then has no discretion to exercise."' [Citations.] Having found that such substantial evidence exists, we conclude that evidence to the contrary is of no moment. The inquiry into the persuasiveness and weight to be given the substantial evidence of defendant's competence is made at the competency hearing, not at this point." (Ary I, supra, 118 Cal.App.4th at pp. 1024-1025.)
Obviously, what we meant by the phrase "the competency hearing" was the retrospective competency hearing we were ordering, and our meaning was unmistakable: it should be a hearing held as required by section 1368 and, clearly, pursuant to the specific procedures set forth in section 1369.
The majority notes that section 1368 commences with the statement that "`[i]f, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant' . . . *106 the court shall suspend all proceedings in the criminal prosecution `until the question of mental competence of the defendant has been determined . . .'" "`pursuant to Section . . . 1369.'" (Maj. opn., ante, at p. 90.) Because, they contend, a retrospective competency hearing is not expressly authorized by statute and, at the time of the enactment of sections 1368 and 1369, "no California court had authorized such a hearing" (maj. opn., ante, at p. 90), neither statute applies to such a hearing because the Legislature could not have "intended the statutes to extend beyond their express terms" (ibid.).
I submit that the logic behind this conclusion is very tortured. More importantly, it is wrong for four separate and distinct reasons. First of all, section 1369 is not, by its terms, limited to hearings conducted "during the pendency of an action." That section commences thusly: "A trial by court or jury of the question of mental competence shall proceed in the following order," following which are six separate lettered subdivisions setting forth the procedure to be followed in the trial of the issue of mental competence. The majority never explains why we must import into section 1369 a limitation derived from the opening phrase of the preceding section.
Second, section 1369 consists of six subdivisions specifically setting out the precise order of procedure in a hearing to try the issue of mental competence. It concludes with subdivision (f), which consists of three sentences, two pertaining to when it is conducted before a jury (not the case here) and the third being the explicit requirement, quoted above, that the burden of proof lies with the defendant asserting incompetence. AlthoughI suppose fortunately under the circumstancesthe majority finds no due process violations inherent in subdivisions (a) through (e) of section 1369, it has "determined" that section 1369(f) "was not intended by the Legislature to apply to retrospective competency determinations." (Maj. opn., ante, at p. 92.) Not a single shred of legislative history or any other authority is cited in support of this ipse dixit "determination."
Third, the majority's rationale for so holding regarding section 1369(f) is that "at the time sections 1368 and 1369 were enacted" a retrospective competency hearing had not been authorized by any California court, Ary I being the first case "to authorize such a hearing."[2] (Maj. opn., ante, at p. 90.) But this overlooks the fact that, twice since the publication of Ary I in May 2004, the Legislature has amended section 1369. It did so in September of *107 that year by an amendment to subdivision (a) and again in 2007 by two other amendments to that subdivision. (See Stats. 2004, ch. 486, § 1; Stats. 2007, ch. 556, § 2.) If the Legislature had, at either time, wanted to clarify that neither that subdivision nor any of section 1369's five other subdivisions applied to a retrospective competency hearing, it could easily have done so. The law is clear that when the Legislature undertakes to amend a statute which has been the subject of judicial construction "it is presumed that the Legislature was fully cognizant of such construction . . . ." (Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist. (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].) Thus: "When a statute has been construed by the courts, and the Legislature thereafter reenacts that statute without changing the interpretation put on that statute by the courts, the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of that statute." (People v. Bouzas (1991) 53 Cal.3d 467, 475 [279 Cal.Rptr. 847, 807 P.2d 1076].)
Fourth, the majority ignores the fact that, once this matter had been remanded to the trial court for the purpose of determining the feasibility of a retrospective competency hearing, that court and both counsel assumed at all times that the hearings were to be, and later were being, conducted pursuant to sections 1368 and 1369. The record is replete with evidence that such was the predicate understood by one and all. For example, when the retrospective competency hearing commenced on October 31, 2005 (after many pretrial hearings), the court announced: "This matter comes on for presentation of evidence regarding covering the issues as to whether or not the defendant was mentally competent to stand trial within the meaning of 1368 and other cases decided by both the California and United States Supreme Court." Thereafter, the court's records summarized each day of the six-day hearing as a "Competency Hearing Pursuant To Penal Code Section 1368."
In the many 2004 and 2005 preretrospective competency hearings, the court and both counsel repeatedly cited sections 1368 and 1369 as the guideposts for the process they were undertaking.[3] One of many examples of this is a memorandum of points and authorities filed by appellant's chief counsel on October 17, 2005, in which that counsel noted that, by directing a Department of Developmental Services regional center to examine appellant, "this Court complied with the dictates of Penal Code § 1369(a)," and by *108 obtaining the report on appellant from the regional center it complied "with the law insofar as the current competence question is concerned."
In conclusion on this point, our decision in Ary I clearly directed the trial court to hold a retrospective competency hearing consistent with sections 1368 and 1369. And exactly that happened; to suggest to the contrary frankly strains credulity.

II.
Next, I find the majority's attempt to distinguish the holding of the United States Supreme Court in Medina v. California (1992) 505 U.S. 437 [120 L.Ed.2d 353, 112 S.Ct. 2572] (Medina) quite unconvincing. Medina came to the United States Supreme Court from our Supreme Court which, two years earlier, had held section 1369(f) constitutional. (People v. Medina (1990) 51 Cal.3d 870, 881-886 [274 Cal.Rptr. 849, 799 P.2d 1282].) The United States Supreme Court granted certiorari and affirmed that conclusion in a seven to two opinion by Justice Kennedy. In a later opinion, that court summarized the Medina court's conclusion thusly: "Our recent decision in Medina . . . establishes that a State may presume that the defendant is competent and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence. [Citation.] In reaching that conclusion we held that the relevant inquiry was whether the presumption `"offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" [Citation.] We contrasted the `deep roots in our common-law heritage' underlying the prohibition against trying the incompetent with the absence of any settled tradition concerning the allocation of the burden of proof in a competency proceeding. [Citation.] Our conclusion that the presumption of competence offends no recognized principle of `fundamental fairness' rested in part on the fact that the procedural rule affects the outcome `only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent.' [Citation.]" (Cooper v. Oklahoma (1996) 517 U.S. 348, 355 [134 L.Ed.2d 498, 116 S.Ct. 1373] (Cooper).) Decisions from our own Supreme Court similarly summarize the holding of Medina. (See, e.g., People v. Sakarias (2000) 22 Cal.4th 596, 618 [94 Cal.Rptr.2d 17, 995 P.2d 152]; People v. Rells (2000) 22 Cal.4th 860, 868 [94 Cal.Rptr.2d 875, 996 P.2d 1184]; see also People v. Castro (2000) 78 Cal.App.4th 1402, 1418-1419 [93 Cal.Rptr.2d 770], disapproved on other grounds in People v. Leonard (2007) 40 Cal.4th 1370, 1389 [58 Cal.Rptr.3d 368, 157 P.3d 973].)
The vast majority of states also require, either by statute or judicial decision, that the defendant bear the burden of proof in a competency *109 hearing. (See Cooper, supra, 517 U.S. at p. 361, fn. 17.) Apparently only four states (Hawaii, Illinois, South Dakota and Wisconsin) place this burden on the prosecution. (Id. at p. 362, fn. 18.) And, contrary to the majority's premise, the applicable federal statute (18 U.S.C. § 4241) has been interpreted by a unanimous United States Supreme Court as meaning "that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence." (Cooper, supra, 517 U.S at p. 362.)[4]
The majority, however, contends that, because a retrospective competency hearing is "very different" (maj. opn., ante, at p. 95) from a competency hearing held before or during trial, due process is violated by allowing the burden of proof of incompetency to be placed on the defendantand that such is the case irrespective of what the relevant state Legislature may have provided via a statute on that subject. Although generously agreeing that "[i]t is reasonable to conclude, as did the Medina court" (maj. opn., ante, at p. 98) that it is constitutionally permissible to allocate the burden of showing incompetency to the defendant at a contemporaneous competency hearing, per the majority such is not the case with a retrospective competency hearing. They explain this conclusion in the following sentence: "[T]he placement of the burden of proof will be the determinative factor in most cases in which competency is determined ex post facto after a Pate violation, and if it is placed on the defendant he or she will rarely, if ever, be able to sustain it. This is inconsistent with the fundamental fairness implicit in the constitutional concept of due process." (Maj. opn., ante, at p. 95, fn. omitted.)
*110 I submit that this sentence demonstrates the unfortunate aroma of judicial legislation permeating the majority's holding.[5] If a logical case can be made for rewriting or amending section 1369(f) to provide that it is not applicableor applicable only in certain circumstancesto a retrospective competency hearing, it is the Legislature's job to do so, not ours. But when the Legislature amended section 1369 in 2004 and 2007again, both times after our decision in Ary Iit apparently did not think it was necessary to do so.
Underlying the majority's position that a "Pate violation" vitiates the rule enunciated in Medina is this premise: "It is the trial court's failure to conduct a competency hearing at [the time of trial] that creates the need for a retrospective hearing years later, when the available evidence is almost never as reliable as that which was available at the time of trial . . . ." (Maj. opn., ante, at p. 96.) The majority then argues that "because the state is responsible for the error, it is only fair to require it to show that the error was harmless." (Maj. opn., ante, at p. 98; see also id. at pp. 96-97.)
I have three problems with this argument. I respectfully suggest that in many if not most cases where the defendant's incompetence was or is not detected at or before trial, the fault is shared in some degree by many parties, e.g., the trial court, the defendant, defense counsel, the prosecution, and perhaps outside parties such as various medical professionals. It is, I suggest, a major logical leap to assume that most of that fault lies with the prosecution.[6] Secondly, even if most or all of that fault is the prosecution's, I believe it is totally inappropriate for the judiciary to create a brand new due process rationale (the presence of a "Pate violation") for imposing the burden of proof on the prosecution in a retrospective competency hearing.
Finally and probably most importantly, on the record in this case, the majority's "almost never as reliable" premise is clearly inapplicable. At the preretrospective competency hearings to discuss the procedure to be followed in the trial court, appellant's counsel expressly stipulated that the record available to the court was adequate to allow a current evaluation of appellant's mental competence. The trial court itself summarized this in its "Retrospective Competency Hearing Decision" of December 15, 2005, in *111 which it recited that appellant's counsel concurred that "sufficient evidence was available to render a reasonable psychiatric judgment of defendant's competence to stand trial." This statement of the court is confirmed by the record of the hearing in question. The majority clearly fails to appreciate the significance of this fact, as its opinion never once mentions it. As this court noted in Ary I, if a retrospective competency hearing is conducted after many years have passed or when the "relevant evidence" is otherwise no longer available, that is one thing. But such is not the case here; whatever may be the appropriate application of a totally new due process rule the majority has created, it certainly ought not to be applied to a case where the parties stipulate that a retrospective competency hearing is feasible because of the availability and currency of the relevant medical evidence.

III.
But there is a more fundamental reason why the majority's ruling is wrong. That reason was stated by the majority of a panel of the Ninth Circuit Court of Appeals in Moran v. Godinez (1994) 57 F.3d 690, certiorari denied (1995) 516 U.S. 976 [133 L.Ed.3d 407, 116 S.Ct. 479] (Moran). They explained why the holding of the United States Supreme Court in Medina[7] was also applicable to a retrospective competency hearing in these words: "Moran challenges the findings of the post-conviction court by arguing that the court incorrectly placed the burden of proof on him to establish his incompetence. He relies on James v. Singletary, 957 F.2d 1562, 1570-71 (11th Cir. 1992). [¶] In James . . . the Eleventh Circuit interpreted Pate . . . to require a defendant to first establish that the trial court failed to conduct a competency hearing at the time a bona fide doubt should have arisen as to his competency. According to James, if a defendant establishes this Pate error, the burden of proof then shifts to the state to prove it is possible to hold a retrospective hearing to determine whether the defendant was competent to stand trial. [Citation.] If the state successfully demonstrates a meaningful retrospective hearing can be held, the burden of proof remains with the state at the retrospective proceeding to show the defendant was competent. [Citations.] [¶] After the decision in James, the Supreme Court, in Medina . . . held that a state may constitutionally place the burden of proof on a defendant at a competency hearing. The Court recognized a state must provide procedures `adequate to protect a defendant's right not to be tried or convicted while incompetent.' [Citation.] However, `[o]nce a State provides a defendant access to procedures for making a competency evaluation, . . . we perceive no basis for holding that due process further requires the State to assume the *112 burden of vindicating the defendant's constitutional right by persuading the trier of fact that the defendant is competent to stand trial.' [Citation.] Thus, so long as the state provides adequate procedures to assess competence, it constitutionally may assign the burden of proof to the defendant. [¶] Although Medina involved a pretrial competency hearing, the Supreme Court's rationale is equally applicable to retrospective competency hearings. When it is established that a petitioner's competence can be accurately evaluated retrospectively, there is no compelling reason to require states to divert from their normal procedures for assessing competence. Moran's competence could be accurately evaluated retrospectively. Nevada was not constitutionally obligated to place the burden of proof on the prosecution to establish his competence, or to relieve him of the burden of establishing his incompetence." (Moran, supra, 57 F.3d at p. 697, italics omitted.)[8]
Inexplicably quoting only the last few phrases of this explanation, the majority dismisses it as "ipse dixit." (Maj. opn., ante, at p. 100.) I think not.
Two years after Moran was decided, the Eighth Circuit Court of Appeals held exactly to the same effect in Rhode v. Olk-Long (8th Cir. 1996) 84 F.3d 284, certiorari denied (1996) 519 U.S. 892 [136 L.Ed.2d 163, 117 S.Ct. 232] (Rhode). It ruled regarding the same issue before the Moran court and now us: "Rhode also argues that the state trial court deprived her of due process by requiring her to bear the burden of demonstrating that she was incompetent. We disagree. The Supreme Court recently held that the due process clause permits a state to require a defendant to bear the burden of proving his or her own incompetence. [Citation.] In Iowa, criminal defendants are presumed competent when evidence about competency is in `equipoise.' [Citation.] Rhode contends that Medina should apply only when the competency hearing and trial are held contemporaneously. She argues that applying a presumption of competence in a post-conviction competency hearing violates due process because it unfairly adds to the difficulties inherent in such hearings. This argument is without merit. In Medina . . ., the Supreme Court indicated that federal courts should not disturb state laws allocating the burden of proof in competency hearings. The Medina decision was based upon the long-standing principle that state legislatures, not federal courts, should establish state *113 rules of criminal procedure. [Citation.] Because we believe that this principle applies with equal force to post-conviction competency hearings, we decline to adopt Rhode's narrow reading of Medina." (Rhode, supra, 84 F.3d at p. 288, italics added.)
With due respect, I also decline to adopt the majority's "narrow reading of Medina."
A state appellate precedent to the same effect as Moran and Rhode is a decision of the Pennsylvania Supreme Court rendered the same year we published Ary I, Com. v. Santiago (2004) 579 Pa. 46 [855 A.2d 682] (Santiago). There, pursuant to Pennsylvania's "Post Conviction Relief Act," a defendant convicted of first degree murder and robbery in 1992 (see 855 A.2d at p. 690) appealed from a trial court's 1996 denial (id. at p. 691) of his petition for relief under that statute claiming, among other things, that the trial court had improperly found him competent at the time of his 1992 trial. On the issue of the propriety of a retrospective competency hearing, the Pennsylvania Supreme Court noted that it had not yet "squarely addressed the issue as to whether a retrospective hearing may be held as to a defendant's competency" (id. at p. 692), but then held, citing decisions from three federal circuits and five state Supreme Courts, that "whenever a court can conduct a meaningful hearing to evaluate retrospectively the competency of the defendant, such a hearing is permissible." (Id. at p. 693.) The court then proceeded to address the issue raised here, i.e., the burden of proof in such a hearing. In so doing, it reaffirmed the principle "that a defendant is presumed to be competent to stand trial. [Citation.] Thus, the burden is on Appellant to prove, by a preponderance of the evidence, that he was incompetent to stand trial." (Id. at p. 694.) The court then reviewed that evidence, and affirmed the trial court's finding that the appellant had not sustained that burden. (Id. at pp. 694-695.)
A final appellate decision to the same effect as Moran, Rhode and Santiago and the three Fifth Circuit opinions cited in footnote 7, ante, is Tate v. State (1995) 1995 OKCR 24 [896 P.2d 1182, 1186-1188] (Tate). There, after considering both Medina and James, the Oklahoma Court of Criminal Appeals rejected the appellant's contention that "the burden of proof should at least be shifted to the State in cases remanded for a retrospective competency determination." (Tate, 896 P.2d at p. 1187.) It held in this regard: "As previously discussed, the feasibility of making a meaningful retrospective competency determination must first be determined. As occurred in the instant case, the State bears the burden of proving that such a determination is possible. [Citation.] An appellant will only bear the burden of proving his incompetency if the State can successfully meet this burden. Otherwise, the appellant is presumed incompetent, and the case must be reversed and *114 remanded. [Citation.] A retrospective competency determination is only feasible in those cases where credible and competent evidence still exists. Thus, inherent in a finding of feasibility is the conclusion that the defendant will be placed in a position comparable to the one he would have been placed in prior to the original trial. Under these circumstances, no due process violation occurs by ultimately placing the burden of proving incompetency on the defendant in a retrospective competency hearing." (Id. at pp. 1187-1188.)
These four decisions have all been cited approvingly by other courts.[9] And theyplus the Fifth Circuit's three pre-Medina rulings (see fn. 7, ante)have stood completely uncontradicted regarding the burden of proof in a retrospective competency hearing until the majority's strikingly different decision here.

IV.
The cases discussed aboveand others to be noted belowilluminate an important difference between the perspective of every other appellate court that has considered this issue (plus me) and that of the majority. The underlying premise of the majority seems to be that retrospective competency hearings always have been and should continue to be "disfavored." My view is different: as and when such hearings are determined to be feasible, they are not disfavored. And I suggest that, as time has gone by, this has become increasingly the viewpoint of both federal and state courts.
There is no question that, in the early portion of the almost half-century since the topic first came up in Dusky v. United States (1960) 362 U.S. 402, 403 [4 L.Ed.2d 824, 80 S.Ct. 788] (Dusky), the prevailing judicial viewpoint was negative regarding both the feasibility and propriety of such hearings. In that per curiam opinion, the United States Supreme Court reversed an appellate court opinion and remanded a case for "a new trial if petitioner is found competent." (Id. at p. 403.) It did so because of the "doubts and ambiguities regarding the legal significance of the psychiatric testimony in this case and the resulting difficulties of retrospectively determining the petitioner's competency as of more than a year ago . . . ." (Ibid.)
This was followed six years later by a decision the majority cites repeatedly, Pate, supra, 383 U.S. 375. There, the court affirmed a Seventh Circuit *115 decision which had vacated an Illinois state court conviction of a defendant who had not been afforded a hearing regarding his competence (as to which there was obvious doubt), and remanded the case to the state court for a retrial and, if then appropriate, a competency hearing. After so ruling, the court noted: "It has been pressed upon us that it would be sufficient for the state court to hold a limited hearing as to Robinson's mental competence at the time he was tried in 1959. If he were found competent, the judgment against him would stand. But we have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial. [Citation.] The jury would not be able to observe the subject of their inquiry, and expert witnesses would have to testify solely from information contained in the printed record. That Robinson's hearing would be held six years after the fact aggravates these difficulties." (Pate, supra, 383 U.S. at p. 387.)
That was the entirety of the Pate court's discussion of retrospective competency hearings. Notwithstanding the majority's repeated mention of Pate, that case says absolutely nothing about the burden of proof, much less if, as or when that burden might or should shift from the defendant to the prosecution because of the latter's failure to detect the defendant's incompetency. (See pt. II. of the dissent, ante.)
The next relevant decision was Drope v. Missouri (1975) 420 U.S. 162 [43 L.Ed.2d 103, 95 S.Ct. 896] (Drope), a decision since widely interpreted as opening the door to such hearings. (See, e.g., Marks, supra, 1 Cal.4th at p. 67.) In commenting on a finding of a Missouri appellate court that "it would have been permissible to defer [further inquiry into petitioner's competence to stand trial] until the trial had been completed," the court held: "Such a procedure may have advantages, at least where the defendant is present at the trial and the appropriate inquiry is implemented with dispatch." But, the court held, such was not the case there because, among other things, of "petitioner's absence during a critical stage of his trial . . . ." (Drope, at p. 182.) Then, citing Dusky and Pate, the court held that, in view of the lapse of time (six years) and other factors, it could not conclude that a "nunc pro tunc determination . . . would be adequate here." (Drope, supra, 420 U.S. at p. 183.)
That was the last the United States Supreme Court has had to say on the subject of retrospective competency hearings.[10] The law from 1975 onward has been made by federal and state appellate courts.
One of which, of course, was this court in Ary I. There, we noted that the "inherent difficulty" of determining, retrospectively, whether a defendant was *116 competent to stand trial "is that there will seldom be sufficient evidence of a defendant's mental state at the time of trial on which to base a subsequent competency determination. [Citation.]" (Ary I, supra, 118 Cal.App.4th at p. 1028.) However, after reviewing the many cases decided in the 34 years since Drope, it is apparent that, in fact, retrospective determinations are neither inherently difficult nor in fact have they been particularly "rare."[11] Since Pate and Drope were decided, counsel and the trial courts have become increasingly willing to seek the assistance of psychiatric professionals to evaluate a defendant's competence. It is not at all uncommon for a criminal defendant who displays signs of mental incompetence to undergo psychiatric testing at an early stage in his trial and for this information to be put forward before or during trial to raise the issue of a defendant's competence to stand trial. In addition, this evidence may also be used to question his competence to waive constitutional rights, as it was in Ary I. And this evidence then remains in the record, where it may be relied on to make a meaningful retrospective determination of competence when the trial court fails to act upon it properly when it is initially presented. (See, e.g., U.S. v. Klat (D.C. Cir. 1998) 332 U.S. App.D.C. 230 [156 F.3d 1258, 1261-1262] [retrospective hearing feasible where pretrial forensic screening to determine competence took place]; U.S. v. Mason (4th Cir. 1995) 52 F.3d 1286, 1293 [retrospective determination likely feasible where "defendant's treating physicians have *117 already conducted an inquiry into the defendant's competence and formed an opinion as to his competence at the time of the first phase of his trial"]; Wilkins v. Bowersox (8th Cir. 1998) 145 F.3d 1006, 1014-1015 [contemporaneous psychiatric evaluations that raised concern about defendant's ability to waive right to counsel could be relied on in retrospective competency hearing]; United States v. Makris (5th Cir. 1973) 483 F.2d 1082, 1092 [possibility of adequate retrospective competency hearing "greatly enhanced by . . . benefit of testimony" of physician the court had appointed earlier in the case].)
Retrospective competency hearings are, therefore, "rare" only as and when they are not "feasible." The test of "feasibility" has recently been articulated in a recent decision citing and relying on Ary I, People v. Robinson (2007) 151 Cal.App.4th 606, 617 [60 Cal.Rptr.3d 102]. In that case, our colleagues in the Third District quoted approvingly from a federal appellate decision summarizing exactly how a retrospective competency hearing is determined to be feasible: "`Four factors are considered in assessing whether a meaningful retrospective competency determination can be made consistent with a defendant's due process rights: "(1) The passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial."'"[12] (151 Cal.App.4th at p. 617.) I agree with this test, and not with the majority who, contrary to the increasing number of cases finding such hearings to be feasible, would fashion a rule seemingly designed to, once again, make it "rare" that a defendant might retrospectively be found competent.
Finally, and as we made clear in Ary I (see Ary I, supra, 118 Cal.App.4th at p. 1029), the burden is plainly on the prosecution to establish the feasibility of conducting a retrospective competency hearing. (See also stressing the significance of this burden, Tate, supra, 896 P.2d at pp. 1187-1188; Lokos v. Capps (5th Cir. 1980) 625 F.2d 1258, 1268, fn. 5; and Sanders, supra, 549 S.E.2d at p. 54.) But once the prosecution has met that substantial burden, I submit it is inappropriate to impose on it an additional burden, the burden of proof regarding the defendant's competency.
*118 And to return to where I started, I submit that it is especially inappropriate for such a burden to be imposed by a judicially created, spanking-new due process rule, especially one that (1) has been rejected by every other federal and state appellate court that has considered the issue (five in all) and (2) runs 180 degrees contrary to a clearly pertinent state statute.
NOTES
[1] All statutory references are to the Penal Code.
[2] We decline defendant's invitation to now reconsider that determination.
[3] Costain testified that his primary role was to handle the expert witnesses. By the time he entered the case, pretrial examination of the experts had been completed and all (with the possible exception of Dr. John Podboy) had submitted their written reports. Based on his discussions with these experts and his interviews of defendant's teachers and family members, he was convinced defendant was mentally retarded and did not understand his legal situation. He did not remember discussing competency with Morton or any discussion with Dr. Timothy Derning about competency. Costain had no opinion about defendant's competency at the time of the trial, but thought afterwards that he "maybe" should have been referred for a competency determination.
[4] Whereas competency involves a defendant's ability to understand and meaningfully participate in the proceedings against him, "[t]he purpose of the `knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." (Godinez v. Moran (1993) 509 U.S. 389, 401, fn. 12 [125 L.Ed.2d 321, 113 S.Ct. 2680], italics omitted.)
[5] On cross-examination, when the district attorney asked Dr. Podboy why, if he was convinced defendant was incompetent to stand trial he did not then raise the issue with defense counsel and seek additional information from them, he answered that he was brought into the case late, at a time when the defense "was almost like a runaway train that they had made up their opinion about what they were going to do or not do," and "[t]hey had other experts involved." Dr. Podboy acknowledged, however, that he had been too passive. Stating that because he "never for a moment thought [defendant] was competent" and was "aware of the fact that [the need for] a [section] 1368 [hearing] can be raised during the course of a trial." "I'll take some responsibility ... and so I participated, so I can be faulted for [being] remiss."
[6] Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].
[7] Like section 1368, the counterpart federal statute, section 4241 of title 18 of the United States Code, applies only to determinations of a defendant's present competency to stand trial, and therefore applies by its own terms only to contemporaneous competency hearings.
[8] It is true that defendant concurred with the trial court's statement that the question presented was "whether or not the defendant was mentally competent to stand trial within the meaning of [section] 1368 and other cases decided by both the California and United States Supreme Court [(i.e., People v. Pennington, supra, 66 Cal.2d 508 and Pate, supra, 383 U.S. 375)]." So do we. But we fail to see why this should be seen as an acknowledgment of the application of the presumption of competency at the retrospective hearing, as the dissent suggests. (Dis. opn., post, at pp. 107-108.) The retrospective hearing is not the hearing referred to in section 1368, and neither Pennington nor Pate indicate that a retrospective hearing is even possible. In any case, defendant clearly objected to imposition on him of the presumption of competency. In opposing the trial court's reconsideration of its initial decision to place the burden of proof on the People, defendant emphasized that he prevailed on his Pate claim by producing substantial evidence indicating he was incompetent to stand trial and argued that because there was no longer a "clean slate," due process demanded that the burden shift to the prosecution.
[9] Both amendments relate to provisions of subdivision (a) of section 1369 regarding the administration of antipsychotic drugs to certain defendants whose competency to stand trial is the subject of a section 1368 hearing.
[10] The dissent's attempt to find a legislative intention to apply the presumption of competency at a retrospective competency hearing, which we find unconvincing, seems indifferent to the fact that such an intention, if there were one, would not insulate the presumption from due process scrutiny.
[11] See, e.g., Barber v. State (Tex.Crim.App. 1988) 757 S.W.2d 359, 362-363; State v. Chapman (1986) 104 N.M. 324 [721 P.2d 392, 395-396]; Wallace v. State (1981) 248 Ga. 255 [282 S.E.2d 325, 330]; State v. Aumann (Iowa 1978) 265 N.W.2d 316, 319-320.
[12] See, e.g., State v. Jones (S.D. 1987) 406 N.W.2d 366, 367-370; Diaz v. State (Del. 1986) 508 A.2d 861, 863-864; Commonwealth v. Crowley (1984) 393 Mass. 393 [471 N.E.2d 353, 357-358]; State v. Bertrand (1983) 123 N.H. 719 [465 A.2d 912, 916]; State v. Heger (N.D. 1982) 326 N.W.2d 855, 857-858; Jolley v. State (1978) 282 Md. 353 [384 A.2d 91, 101]; People v. McCullum (1977) 66 Ill.2d 306 [5 Ill. Dec. 836, 362 N.E.2d 307, 311].
[13] See, e.g., U.S. v. Robinson (4th Cir. 2005) 404 F.3d 850, 856-857.
[14] See, e.g., U.S. v. Hoskie (9th Cir. 1991) 950 F.2d 1388, 1392; U.S. v. Velasquez (3d Cir. 1989) 885 F.2d 1076, 1089; Brown v. Warden, Great Meadow Correctional Facility (2d Cir. 1982) 682 F.2d 348, 353-354; United States v. Hollis (3d Cir. 1977) 569 F.2d 199, 203-204; United States v. DiGilio (3d Cir. 1976) 538 F.2d 972; United States v. Makris (5th Cir. 1976) 535 F.2d 899, 902; United States v. Williams (M.D.Fla., June 7, 2007, No. 5:06-cr-36-Oc-10GRJ) 2007 WL 1655371; U.S. v. Thomas (D.Me. 2007) 519 F.Supp.2d 135, 139; U.S. v. Belgarde (D.N.D. 2003) 285 F.Supp.2d 1218, 1220; U.S. v. Kokoski (S.D.W.Va. 1994) 865 F.Supp. 325, 329; U.S. v. Riggin (S.D.Ind. 1990) 732 F.Supp. 958, 963.

Citing Cooper v. Oklahoma (1996) 517 U.S. 348, 362 [134 L.Ed.2d 498, 116 S.Ct. 1373], the dissent says that section 4241 of title 18 of the United States Code "has been interpreted by a unanimous United States Supreme Court as meaning `that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence.'" (Dis. opn., post, at p. 109.) The dissent misreads Cooper. That case did not involve a federal but a state prosecution, and the federal statute was therefore inapplicable. Moreover, the issue in Cooper was the standard of proof, not the party to which the burden of proof is allocated. Allowing that, as held in Medina, a state could impose the burden of proving incompetency on the defendant, the court held that it could not require proof by clear and convincing evidence but only (as under 18 U.S.C. § 4241) by a preponderance of the evidence. U.S. v. Robinson, supra, 404 F.3d 850, which the dissent also relies upon and was a federal prosecution, provides no reasoning and seemingly adopts the erroneous belief that Cooper relates to allocation of the burden of proof in a federal criminal case.
The two remaining cases the dissent relies upon for the proposition that the federal statute imposes the burden of proof on the defendant contain language hard to reconcile with the view of most federal courts and, in any case, are distinguishable. U.S. v. Izquierdo (11th Cir. 2006) 448 F.3d 1269, involved a motion to withdraw a guilty plea based on incompetency, and the holding was explicitly limited to that particular circumstance. (Id. at p. 1278.) Battle v. U.S. (11th Cir. 2005) 419 F.3d 1292, involved a substantive claim of incompetency, not a Pate claim, and the defendant was for that reason not entitled to the benefit of a presumption of incompetency at a competency hearing in federal court. (Id. at pp. 1298-1299.)
[15] See, e.g., U.S. v. Mason (W.D.N.C. 1996) 935 F.Supp. 745, 759-760.
[16] The instant case is illustrative, as the conflict in the expert testimony in this case relates primarily to the scientifically uncertain relationship between mental retardation and competency to stand trial. (See Ellis & Luckasson, Mentally Retarded Criminal Defendants (1985) 53 Geo. Wash. L.Rev. 414, 452-460.) The views of alienists and the courts on this issue are still evolving. While early cases required that the degree of mental retardation sufficient to show incompetency be substantial (see, e.g., The State of Iowa v. Arnold (1861) 12 Iowa 479), modern courts have found mild to moderate retardation sufficient, particularly when the defendant has an impaired ability to communicate. (See, e.g., The State v. Williams (La. 1989) 381 So.2d 439.)
[17] As we held in Baqleh v. Superior Court (2002) 100 Cal.App.4th 478 [122 Cal.Rptr.2d 673], a defendant cannot on the basis of the Fifth Amendment refuse to submit to a mental examination by a prosecution expert at a hearing to determine present competency to stand trial.
[18] The dissent takes the position that we impose the burden of proof on the People because we believe the prosecution bears "most" of the fault for Pate violations. (Dis. opn., post, at p. 110.) That is certainly not our view, which the dissent distorts.

It is worth noting, however, that the right of a defendant to a competency determination when there is bona fide doubt as to his or her competency is unique in that not only must the issue be raised by the court, but it may also be raised independently by the prosecutor. (People v. Medina (1990) 51 Cal.3d 870, 885 [274 Cal.Rptr. 849, 799 P.2d 1282], affd. Medina, supra, 505 U.S. 437; see also § 1369, subd. (b)(2) 18 U.S.C. § 4241(a), specifically conferring on a prosecutor the right to raise the issue whether a defendant is competent to stand trial.) Because the right vindicated by Pate is an aspect of a defendant's constitutional right to a fair trial, and prosecutors bear no small responsibility for the fairness of trial (see, e.g., United States v. Agurs (1976) 427 U.S. 97 [49 L.Ed.2d 342, 96 S.Ct. 2392]; Brady v. Maryland (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194]), justice is served when a district attorney with substantial reason to believe a defendant may not be competent raises that issue at the time of trial. "The State's obligation is not to convict, but to see that, so far as possible, truth emerges." (Giles v. Maryland (1967) 386 U.S. 66, 98 [17 L.Ed.2d 737, 87 S.Ct. 793] (conc. opn. of Fortas, J.).) Although this is not the chief basis upon which we impose the burden of proof on the People at a retrospective competency hearing, that burden will almost certainly induce district attorneys to be more attentive to the issue of competency at the time of trial than is presently the case, and thereby diminish the likelihood of Pate violations.
[19] Analysis is also absent in almost all of the other cases the dissent relies upon, which simply assume, without inquiry, that a retrospective competency hearing deemed feasible is no different from a contemporaneous hearing in any way related to the burden of proof.

In Rhode v. Olk-Long (8th Cir. 1996) 84 F.3d 284, the court's entire answer to the petitioner's argument that applying a presumption of competence at a retrospective hearing violates due process, is as follows: "The Medina decision was based upon the long-standing principle that state legislatures, not federal courts, should establish state rules of criminal procedure. [(Medina, supra, 505 U.S. at pp. 445-446.)] Because we believe that this principle applies with equal force to post-conviction competency hearings, we decline to accept Rhode's narrow reading of Medina." (Rhode v. Olk-Long, at p. 288.) The entire "analysis" of the court in Com. v. Santiago (2004) 579 Pa. 46 [855 A.2d 682], begins and ends with "the principle that a defendant is presumed to be competent to stand trial. [Citation.] Thus, the burden is on [a]ppellant to prove by a preponderance of the evidence that he was incompetent to stand trial." (Id., 855 A.2d at p. 694.) In both Wheat v. Thigpen (5th Cir. 1986) 793 F.2d 621 and Martin v. Estelle (5th Cir. 1978) 583 F.2d 1373, the Fifth Circuit concluded that "[t]he petitioner bears the burden of proving his incompetency by a preponderance of the evidence" (Wheat v. Thigpen, at p. 630; see Martin v. Estelle, at p. 1374) solely on the basis of its earlier opinion in Bruce v. Estelle (5th Cir. 1976) 536 F.2d 1051, 1059. All Bruce v. Estelle states at the cited page is that "[a]s the habeas cases indicate, it is entirely proper to place the burden on the petitioner. See Drope v. Missouri, [(1975)] 420 U.S. 162, 174 [43 L.Ed.2d 103, 95 S.Ct. 896]." (Ibid.) However, all Drope says at the cited page is that the court did not question Missouri Supreme Court rules that "reallocate the respective burdens of the individual and the State and to delimit the scope of state appellate review" of what are now generally referred to as Pate claims. (Drope, at p. 174.) The Drope court rejected the state's claim that the defendant's due process rights would be adequately protected by remanding the case for a retrospective hearing, concluding that "[g]iven the inherent difficulties of . . . a nunc pro tunc determination under the most favorable circumstances, [citations], we cannot conclude that such a procedure would be adequate here." (Id. at p. 183.)
[20] Moreover, the burden of proof as to whether a retrospective hearing is feasible is almost never determinative and virtually irrelevant. As we stated in Ary, supra, 118 Cal.App.4th at page 1029, "the issue of whether there is sufficient evidence available upon which to base a retrospective competency determination is not primarily a factual matter. Indeed, a court of appeal may make this determination based purely on the record before it. [Citation.] Therefore, imposing a standard of evidentiary proof would not be particularly relevant or helpful." The issue will invariably turn on whether contemporaneous medical evidence of competence to stand trial is fortuitously still available. It is instructive that in this case defendant stipulated that such evidence was available and that a retrospective hearing was therefore feasible.
[21] Whether retrospective competency hearings are or should be disfavored is irrelevant to our point. The courts that have said such hearings are "generally disfavored" and even "strongly disfavored" (see, e.g., U.S. v. Ewing (7th Cir. 2007) 494 F.3d 607, 623; Weisberg v. State of Minnesota (8th Cir. 1994) 29 F.3d 1271, 1278), have also recognized that despite their "doubts about the efficacy of such proceedings" (Galowski v. Berge (7th Cir. 1996) 78 F.3d 1176, 1181), and the "obvious hazards" they present (Ray v. Bowen (7th Cir. 1988) 843 F.2d 998, 1006), "the mere passage of time may not make the effort meaningless." (United States ex rel. Bilyew v. Franzen (7th Cir. 1982) 686 F.2d 1238, 1247.) That view is fully consistent with the position this court unanimously took in Ary, supra, 118 Cal.App.4th 1016, and it continues to be our position.
[22] We are mindful of the view of some that "trial courts are reluctant to find that a convicted defendant had been incompetent to plead or to stand trial, [because that] would, of course, mean that a completed procedure (trial or guilty plea) would have to be overturned and the process begun again," and that "[i]t is clearly easier for an appeals court to make such a decision." (Miller & Germain, The Retrospective Evaluation of Competency to Stand Trial, supra, 11 Int'l J.L. & Psychiatry at p. 120.) Defendant has not expressed this view, however, and we have no reason to think the trial judge in this case will elevate expediency over his view of the evidence.
[1] The Reporter of Decisions outdid us; he cited section 1368 in each of the opinion's three headnotes. (Ary I, supra, 118 Cal.App.4th at p. 1017.)
[2] But not the last: since its publication five years ago, Ary I has been relied upon twice by our sister courts in approving retrospective competency hearings. (See People v. Kaplan (2007) 149 Cal.App.4th 372, 387-389 [57 Cal.Rptr.3d 143]; and People v. Robinson (2007) 151 Cal.App.4th 606, 617 [60 Cal.Rptr.3d 102]; see also State v. Davis (2006) 281 Kan. 169 [130 P.3d 69, 78].) Even more importantly, our Supreme Court cited Ary I in a footnote in People v. Young (2005) 34 Cal.4th 1149 [24 Cal.Rptr.3d 112, 105 P.3d 487], and summarized its holdingapparently approvinglyas follows: "[I]n some circumstances, a remand may be appropriate and reversal for such error might be unnecessary." (Id. at p. 1217, fn. 16; see also People v. Superior Court (Marks) (1991) 1 Cal.4th 56, 67 [2 Cal.Rptr.2d 389, 820 P.2d 613] (Marks).)
[3] Which suggests that I was not the only one who thought the hearing we were ordering in Ary I would be conducted pursuant to both sections 1368 and 1369. Put another way, both the trial court and counsel apparently did not think it was "far from clear" (maj. opn., ante, at p. 91) that those provisions applied to the hearing they were in the process of conducting.
[4] Contrary to the majority's footnotes 7 and 14, it is they who are misreading the applicable federal authority. It is true that, prior to the 1996 decision in Cooper, many federal circuits had held that the burden of proof in such hearings lay with the government. But, subsequent to Cooper, all federal circuits that have addressed the issue have agreed that, per the sentence quoted above from that decision, the burden is the defendant's. (See, e.g., U.S. v. Izquierdo (11th Cir. 2006) 448 F.3d 1269, 1276-1278 (Izquierdo); Battle v. U.S. (11th Cir. 2005) 419 F.3d 1292, 1298-1299; U.S. v. Robinson (4th Cir. 2005) 404 F.3d 850, 856, cert. den. (2005) 546 U.S. 916 [163 L.Ed.2d 253, 126 S.Ct. 288].) Yes, as the Izquierdo court noted, the holding is dicta (Izquierdo, supra, 448 F.3d at p. 1277), but unanimous dicta. More importantly, and totally ignored by the majority, since the publication of Cooper in 1996, no federal appellate court has held to the contrary. Further, the majority's efforts (maj. opn., ante, at p. 93, fn. 14) to distinguish the three recent federal appellate case following the quoted statement in Cooper regarding the burden of proof under federal law are, I submit, rather unconvincing. Finally, the majority's statement that the ruling quoted above from Cooper concerns only the "standard of proof" is plainly incorrect. A careful reading of both that sentence (which uses as its subject the word "accused") and the decision's many prior and subsequent references to "burden of proof" and "burden" (Cooper, supra, 517 U.S. at pp. 360-363) clearly establishes that it was addressing both issues.
[5] The majority's apparent urge to formulate policy is also demonstrated by the alternative rationale for its determination that section 1369(f) is unconstitutional when applied to a retrospective competency hearing: the need to "deter . . . investigative errors and thereby diminish the likelihood of Pate violations" plus inducing "district attorneys to be more attentive to the issue of competency at the time of trial than is presently the case . . . ." (Maj. opn., ante, at p. 97 & fn. 18.) Again, I respectfully submit that the Legislature is the proper body to address such issues.
[6] The majority contends that I err in interpreting its opinion to so suggest. (See maj. opn., ante, at p. 97, fn. 18.) I think not, as both the last quotation in the preceding paragraph above and the tenor of the concluding paragraph of the majority's footnote 18 confirm.
[7] Even before Medina, one federal appellate court had held three times that the burden of proof in retrospective competency hearings lies with the defendant, not the State. (See Wheat v. Thigpen (5th Cir. 1986) 793 F.2d 621, 631; Bruce v. Estelle (1976) 536 F.2d 1051, 1059; Martin v. Estelle (5th Cir. 1978) 583 F.2d 1373, 1375.)
[8] The majority relies strongly on the Eleventh Circuit's pre-Medina opinion in James v. Singletary, supra, 957 F.2d 1562 (James). However, both the Moran and Rhode courts effectively held that James was superseded by Medina. In addition, the later history of James is rather checkered. In three subsequent decisions, the Eleventh Circuit has either criticized one of James's holdings or distinguished it. (See U.S. v. Hogan (11th Cir. 1993) 986 F.2d 1364, 1371-1372; Wright v. Secretary for Dept. of Corrections (11th Cir. 2002) 278 F.3d 1245, 1259; Card v. Singletary (11th Cir. 1992) 963 F.2d 1440, 1448, fn. 9.) And three Georgia Supreme Court justices, in a dissent discussing both Medina and Moran, suggested that the James court's "glaring mistake" has been "implicitly noted" by other courts. (Traylor v. State (2006) 280 Ga. 400 [627 S.E.2d 594, 602].)
[9] See, e.g., Littlejohn v. State (1998) 1998 OKCR 75 [989 P.2d 901, 908] (following Tate); Doughty v. Grayson (E.D.Mich. 2005) 397 F.Supp.2d 867, 879-880 (federal district court in another circuit following Rhode); Reynolds v. Norris (8th Cir. 1996) 86 F.3d 796, 802-803 (following Rhode); Com. v. Brown (2005) 582 Pa. 461 [872 A.2d 1139, 1153] (following holding of Santiago); and Clayton v. Gibson (10th Cir. 1999) 199 F.3d 1162, 1169-1170 (Clayton) (following Moran).
[10] Although they certainly could have: despite dissents in both Moran and Rhode, the Supreme Court denied certiorari in both. (See Moran v. McDaniel, supra, 516 U.S. 976; Rhode v. Long, supra, 519 U.S. 892.)
[11] A law review survey for the period since Ary I was published strongly suggests that, as time has passed, retrospective competency hearings are becoming both more common and more acceptable to appellate courts. (See, e.g., Thirty-Third Annual Review of Criminal Procedure, Competency to Stand Trial (2004) 33 Geo. L.J. Ann.Rev.Crim.Proc. 390, 397-399; Thirty-Fourth Annual Review of Criminal Procedure, Competency to Stand Trial (2005) 34 Geo. L.J. Ann.Rev.Crim.Proc. 400, 403-410; Thirty-Fifth Annual Review of Criminal Procedure, Competency to Stand Trial (2006) 35 Geo. L.J. Ann.Rev.Crim.Proc. 411, 418-421; Thirty-Sixth Annual Review of Criminal Procedure, Competency to Stand Trial (2007) 36 Geo. L.J. Ann.Rev.Crim.Proc. 420, 423-430; and Thirty-Seventh Annual Review of Criminal Procedure, Competency to Stand Trial (2008) 37 Geo. L.J. Ann.Rev.Crim.Proc. 424, 431-432.) The number of reported cases approving retrospective hearings appears to confirm this. In addition to the decisions cited in the text, other federal appellate cases to this effect include: U.S. v. Auen (2d. Cir. 1988) 846 F.2d 872, 878; U.S. v. Renfroe (3d Cir. 1987) 825 F.2d 763, 767-768; U.S. v. Mason (4th Cir. 1995) 52 F.3d 1286, 1293; Wheat v. Thigpen, supra, 793 F.2d at pp. 630-631; Cremeans v. Chapleau (6th Cir. 1995) 62 F.3d 167, 169-170, abrogated on other grounds in Thompson v. Keohane (1995) 516 U.S. 99, 111 [133 L.Ed.2d 383, 116 S.Ct. 457]; U.S. ex rel. Lewis v. Lane (7th Cir. 1987) 822 F.2d 703, 706; U.S. ex rel. Bilyew v. Franzen (7th Cir. 1988) 842 F.2d 189, 192; and Reynolds v. Norris (8th Cir. 1996) 86 F.3d 796, 802-803.

In addition to the recent California authority noted in footnote 2, ante, see also State v. Sanders (2001) 209 W.Va. 367 [549 S.E.2d 40, 53-55] (Sanders); Thompson v. Com. (Ky. 2001) 56 S.W.3d 406, 409-410; State v. Bostwick (1999) 1999 MT 237 [296 Mont. 149, 988 P.2d 765, 772-773]; State v. Snyder (La. 1999) 750 So.2d 832, 855-856; State v. McRae (2000) 139 N.C.App. 387 [533 S.E.2d 557, 560-561]; and many other decisions cited in these cases. All of this authority suggests that the majority's underlying premise that retrospective competency hearings are rarely feasible (see especially its efforts to distinguish Moran and similar authority at pp. 99-102, ante, of the maj. opn.) is becoming, if it is not already, outdated.
[12] The Third District cited U.S. v. Collins (10th Cir. 2005) 430 F.3d 1260, 1267, as the source of this principle, but the Collins court apparently derived it from two earlier decisions, McGregor v. Gibson (10th Cir. 2001) 248 F.3d 946, 962-963, and Clayton. As noted in footnote 9, ante, Clayton specifically followed the analysis in Moran. (See Clayton, supra, 199 F.3d. at pp. 1169-1170.)